LEMMON, Judge.
This appeal contests as excessive an award for property damage to an airplane owned by Rader & Associates, a Florida partnership.
The Beachcraft AT-11 was flown from Miami to New Orleans for work on an aerial photography contract for the Regional Planning Commission. Upon arrival in New Orleans on March 9, 1967, the aircraft was stored overnight by defendant, Harper Aviation, Inc., a Lakefront Airport hangar and storage service, which took plaintiffs’ aircraft into its exclusive custody and control. The photography was to begin the following morning, but the aircraft was damaged while in Harper’s care. On March 16, 1967, the craft was returned to service.
Since Harper, as a compensated depository, failed to prove that it was free from negligence, and now concedes liability, quantum is the only issue before us. After a trial on the merits, the trial court rendered judgment against Harper in the amount of $150.00, the deductible amount of its liability insurance policy, and against Harper’s insurer, Eagle Allstar Insurance Company, in the amount of $6,495.00. Defendants have appealed on certain items of damage and expenses which they allege the trial court should not have included in the award.
The photographic contract to be performed with the damaged aircraft required immediate action in order to be completed prior to the onset of spring foliage. To restore the plane to service as quickly as possible and to mitigate damages, Rader employees undertook to secure the replacement parts, none of which were available in New Orleans. Most of the parts were shipped from Miami where the chief of the photogrammetric department, Elmore K. Kerkela, handled the arrangements.
The pilot, Harold E. Thompkins, and the photographer, Richard A. Kranick, had originally flown to New Orleans for the mission. When the damage occurred, Kranick returned to Miami for other duties during the six-day period required to repair the aircraft.[1] Thompkins remained in New Orleans to coordinate and supervise the repairs.
When the repairs were accomplished, Kranick returned to New Orleans, and the contract was completed. However, this was done with a temporary, limited use propeller secured in Monroe, since it was necessary to ship the damaged propeller to Miami to be repaired there. The plane returned to Miami on the temporary propeller, whereupon the limited usage on the propeller was exhausted and the aircraft grounded. There was testimony that the plane was out of service an additional eight days in Miami until the repair of the damaged original propeller was completed.
The trial court properly awarded the following items in the total amount of $3,-423.91, which amount is not contested on appeal:
1. Salary of pilot for five days in New Orleans during repair of aircraft,[2]
2. Salary of photographer for two days and expense of flight to and from Miami,
3. Long distance telephone expenses,
*364 4. Repair of damage to aircraft and to propeller.
Rader neither appealed nor answered this appeal, and there can be no increase in the above amount or in any of the contested items, which will be discussed individually.
SALARY OF KERKELA, CHIEF OF PHOTOGRAMMETRIC DEPARTMENT
Defendants’ primary objection to the allowance of 45 hours to this employee is that he was not produced at trial.
Rader introduced time cards relating to these hours and the work performed by Kerkela in Miami in connection with the damage to the aircraft. The cards were kept in the course of Rader’s business and were identified and explained by the head of the accounting department, who was custodian of the records. Furthermore, the long distance telephone records substantiate a considerable amount of time expended by this employee.
It is not necessary that each of Rader’s employees testify as to the services they performed in order for Rader to recover the total amount of salaries paid as a result of defendant’s negligence. This item in the amount of $511.65 was sufficiently proved.
HOTEL AND TAXI EXPENSE— THOMPKINS AND KRANICK
The record indicates that the pilot, Thompkins, during the period of the repairs, and the photographer, Kranick, during the initial two days in New Orleans, incurred the following reasonable expenses :
Thompkins Kranick
Hotel $ 81.12 $27.04
Taxi 20.75 19.50
Motel (Monroe) 7.29
$109.16 $46.54
Kranick identified the hotel invoices and testified to the other expenses. The head of the accounting department identified the hotel and taxi expenses submitted in the usual course of business operations by Thompkins, who is no longer with the company. He verified that Thompkins was in New Orleans during this period only to attend to the repairs of the aircraft.
The reasoning about the necessity of producing each employee used in the previous item applies equally here.
We hold that these expense items were reasonable and were adequately proved. However, the trial court apparently included the expenses for these two men during the period in which the contract work was actually performed, and the judgment will be amended accordingly to reflect only the expenses allowed herein.
HERTZ TRUCK RENTAL
A temporary propeller was located in Monroe, Louisiana, and the pilot, Thompkins, rented a truck from The Hertz Corporation to transport the propeller to New Orleans. The invoice indicates a truck rental from March 13 to March 15, 1967, to Rader & Associates, by Harold E. Thompkins; residence — Jung Hotel; destination — Monroe and back. The testimony established that Thompkins was in New Orleans on these dates for the sole purpose of assisting in the repair work, and his expense account indicates motel rental in Monroe on March 13. There was sufficient proof for an award of $76.59 for this expense.
SALVAGE VALUE OF TEMPORARY PROPELLER
The sum of $575.00 for a replacement propeller was included in the repairs to the aircraft, which is not contested on appeal. However, since the original propeller was repaired and returned to the *365 plane, at a cost now also conceded by defendants, a claim is made for salvage value of the temporary propeller.
The replacement propeller, with 25 hours available time, was secured to expedite return of the aircraft to service. It was used for 28 hours to perform pending contract work and thus minimize damages, the overage being used to complete a flight in progress. Thereafter the aircraft was grounded because the time on the propeller had run out.
The record contains no evidence that there was any salvage value to the propeller, and it would be sheer speculation to assign any. While it appears that Rader by using the replacement propeller for 28 hours saved a like number of hours of usage on the total life of the regular propeller, there is no evidence on which to assign any value to this savings. We conclude that the award for the purchase of the propeller with no allowance for salvage value was proper.
LOSS OF USE
Rader claims loss of use for five days in New Orleans and eight days in Miami. The trial judge allowed six days (five in New Orleans and one for replacement of the propeller in Miami), four hours minimum per day, at $100.00. per hour, or a total of $2,400.00. This was based on testimony that a fair rental value of a similar plane was $100.00 per hour, with a four hour daily minimum.
If Rader had rented a replacement aircraft, the reasonable cost of rental would have been the measure of damages. Since no replacement was rented, the fair rental value is irrelevant.[3] While Rader could have rented a replacement plane to complete any pending contracts, by diligent efforts in locating parts and supervising repairs and by judicious scheduling, they eliminated the necessity of renting a replacement and thereby minimized damages. However commendable Rader’s actions were, they cannot be awarded damages for losses which were not incurred.
On the other hand, Rader was deprived of use of the aircraft for six days, and the loss of use of equipment normally used to produce income should be compensated in the amount of net income of profit lost. However, Rader again failed to. show a monetary loss by his approach.
To prove the value of this loss of use and availability, Rader showed that for six months before and after the date of the accident, a period of 260 working days, the plane was in flight on 109 days (42% of all working days). Photographic missions comprised 60% of the use of the plane, and transportation of company executives to handle job responsibilities in other engineering endeavors, the remaining 40%.
In examining the regular uses of the company plane and the resulting damages which would normally be expected while it was out of use, we find no monetary loss. There was no allegation or testimony that executives usually transported by the aircraft had to take commercial flights during the repair period. The only two photographic contracts referred to in the record were timely performed, and there is not even a contention that other contracts were lost because the plane was out of service.
There was no proof of loss of income or profit while the plane was unavailable. While the record shows the number of working days that the plane was used (only 42% of the time), there are no corresponding income figures on which a correlation could be made. Neither are there any figures in the record which would indicate a diminution in income attributable to the repair period.
We are convinced that Rader did not suffer a monetary loss because of the unavailability of the plane. Rader was compensated in other items in this award for *366 their true damages while the plane was out of use, such as the salary of the pilot who spent five days attending to the repairs.
We therefore conclude that an award for loss of use should be disallowed.
For the reasons assigned, the judgment is amended to reduce the award to $4,167.85, and as amended the judgment of the trial court is affirmed. All costs are assessed against defendant-appellant.
Amended and affirmed.

.Only five days were allowed by the trial court, because of confusion in the testimony.

. No recovery was allowed for salary while the aircraft was out of service in Miami, as the trial judge felt this was not clearly established by the evidence.

. The evidence showed Rader did not rent the aircraft to others and thus lost no income on this account while it was out of service.