**CHARLIE HAIRSTON AIRCRAFT, INC., Charles M. Hairston, and London & Edinburg Insurance Company, Ltd.**

v.

**BEECH AIRCRAFT CORPORATION et al.**

**Civ. A. No. 751192.**

United States District Court,
W. D. Louisiana,
Shreveport Division.

Sept. 22, 1978.

Maynard E. Cush, Benjamin C. King, Cook, Clark, Egan, Yancey & King, Shreveport, La., for plaintiffs.

Charles W. Salley, Lunn, Irion, Switzer, Johnson & Salley, Shreveport, La., for defendants.

## OPINION

DAWKINS, Senior District Judge.

Presented here is a products liability action arising out of the failure of a part of the nose-gear assembly of a small commercial aircraft. No personal injury is involved, but damages are claimed for loss of income and expenses during the period of repair as well as for the cost of repairs. Plaintiffs are Charlie Hairston Aircraft, Inc., corporate owner of the aircraft, Charles M. Hairston, operator of the plane and sole stockholder of the corporation, and London & Edinburg Insurance Company, insurer of the plane and subrogee of the corporation for amounts paid under a collision insurance policy. The principal defendant ·is Beech Aircraft Corporation, manufacturer of the airplane. "XYZ Corp." and "ABC Ins. Co." also were named as defendants, but no attempt has been made to substitute real parties for these unknown entities.

A three-day bench trial of this matter was held, June 14–16, 1978, at the conclusion of which the matter was taken under advisement. All parties now having filed briefs and rebuttal briefs, the case now is ready for decision. For the reasons which will appear below, it is our considered opinion that there should be judgment for plaintiffs against defendant.

### FINDINGS OF FACT

The aircraft involved here, a 1971 Beech Duke A–60, Serial No. P152, Registration No. N7–RA, was purchased by the predecessor of Charlie Hairston Aircraft, Inc., Hairston Air Charter, Inc., on January 3, 1974, from Halvorson Aero, Inc., of Duluth, Minnesota. Although Hairston testified there were 1605 hours on the plane when purchased, the flight log reveals that there were 1555.6 hours when the plane was inspected on the 10th and 11th of January, 1974. At the time of the accident, November 11, 1974, at least 1960.5 hours had been attained (reading at inspection on September 1, 1974).

Hairston began his flight training in 1960, and since then he has worked for various employers as pilot, mechanic, and flight instructor. He is certified in each of these capacities by the Federal Aviation Administration. In 1971, he and Allen Penniman formed Hairston Air Charter, Inc., a

small aircraft charter operation, using a twin-engine Beech Baron. In early 1974, the Baron was traded in for the Beech Duke, and in August of 1974, Hairston purchased Penniman's interest and formed Charlie Hairston Aircraft, Inc. Hairston was qualified at trial as an expert in aircraft maintenance.

On November 11, 1974, while on a routine flight out of the Shreveport Downtown Airport to check the avionics in the Beech Duke, Hairston lowered its landing gear, but discovered that the light which would have indicated that the nose gear was locked down did not flash on. At this point, Hairston contacted the tower of Downtown Airport and advised them that he would like to fly over the field. During this flight, Hairston attempted to retract the nose gear and heard a "loud pop." The tower advised him that the gear was not locked and that he should proceed to Shreveport Regional Airport, a much larger field, with fire protection and personnel.

After several more unsuccessful attempts to lock the nose gear, Hairston made an emergency landing at Regional Airport. Fortunately, and largely because of the skill displayed in the landing, Hairston was not injured. The nose of the Duke, however, as well as its engines and propellers did sustain substantial damage.

Subsequently, a temporary nose-gear assembly and two new propellers were attached, and the plane was flown to Wichita, Kansas, for repairs by Beech. The engines were repaired separately by Mid States Aircraft Engines, Inc., of Tulsa, Oklahoma. The plane was returned to operation in the middle of January, 1975, having been out of operation for approximately two months.

With this background, we now turn to the specifics of plaintiffs' claim. It is undisputed that the "loud pop" was attributable to the failure and breakage of the forward retract rod, a component of the nose-gear assembly which serves to extend and retract the nose landing gear. Hotly disputed, however, is the cause of the failure of the rod; indeed, it is plaintiffs' claim of defectiveness of this rod which forms the basis for this suit.

The forward retract rod is the forward-most of three such rods in the nose-gear assembly. It is a hollow metal pipe shaped into a gentle "S" curve, and it is the only one of the three rods with such shape. Bill Bortsfield, a Group Engineer of Mechanical Systems for Beech Aircraft, testified that the "S" shape was chosen primarily because of space limitations in the nose-gear housing.

Robert E. Hopper, metallurgist, testifying for plaintiffs, and D. W. Oliver, metallurgical engineer, testifying for defendant, both noted the presence of multiple longitudinal cracks on the inside diameter of the rod at the point of failure. There seems to be no great dispute over whether the cracks existed at the time of manufacture, and, after full consideration, we find that they did so exist. The experts differ, of course, as to the significance of such cracks. Oliver stated that the longitudinal cracks had no effect on the eventual failure. Hopper stated that he felt there was a design defect, but admitted he had no specific design information. Based on information provided by the expert testimony, however, we find that the presence of multiple longitudinal cracks on the inner diameter of the rod created an unreasonable risk that the rod would fail prematurely under normal use.

When a straight pipe is subject to tensile (pulling) stress only, the presence of longitudinal cracks does not ordinarily affect the ability of the pipe to withstand such stress. This proposition is not disputed. However, it is difficult to accept the testimony which indicates that multiple longitudinal cracks would not affect the strength of a curved pipe when it is subjected to a tensile stress. In such a situation, which occurs during a retraction, a tensile (stretching) load would be placed on the inside of the curve, and a compression load would be placed on the outside of the curve. Conversely, when the nose gear is extended, a compression load is placed on the inside of the curve and a tensile load is placed on the outside of the curve. Hairston testified that the loud pop, signifying the breaking of the rod, occurred

when he was attempting to retract the nose gear.

It is our considered opinion that the most probable explanation for failure of the forward retract rod is that the presence of the multiple longitudinal cracks weakened the rod at the curve to such an extent that it was unable to withstand repeated tensile and compression loads during retraction and extension and that, under such repeated stresses, it finally broke.

In addition, we note that Henry Leon Hayes, head of Beech's Structures Group, Production Engineering Division, testified regarding the testing of the forward retract rods prior to placement in the airplane. He stated that samples from every lot of material were tested for chemical properties and strength. However, he also stated that each retract rod is tested *prior to bending* for *transverse cracks* but *not for longitudinal cracks,* even though he felt that a longitudinal crack in more than 10 to 15% of the width of the wall of the tubing would affect the strength of the pipe.

Defendant introduced exhibits and testimony showing various abrasions on parts of the nose-gear assembly. This, combined with testimony that such abrasions might be caused by use of improper power while rigging the assembly, was an attempt by defendant to show that the nose gear had been misrigged. While we do find that a slight possibility of misrigging was shown, we do not find that misrigging was proven or even probable. Hairston and Marion Thompson, an unbiased FAA inspector, both testified that the abrasions were not present at the last inspection (September 1, 1974). There was no proof, other than the presence of these abrasions, that misrigging had occurred; there were only statements by Beech personnel that misrigging *might* have occurred.

## CONCLUSIONS OF LAW

### A. LIABILITY

The general principles of law applicable in products liability cases in Louisiana are found in the seminal case of *Weber v. Fidel-*

*ity & Casualty Ins. Co. of N. Y.,* 259 La. 599, 250 So.2d 754 (1971). There the Louisiana Supreme Court said:

"A manufacturer of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part, sustains an injury caused by a defect in the design, composition, or manufacture of the article, if the injury might reasonably have been anticipated. However, the plaintiff claiming injury has the burden of proving that the product was defective, *i. e.,* unreasonably dangerous to normal use, and that the plaintiff's injuries were caused by reason of the defect.

\* \* \* \* \* \*

"If the product is proven defective by reason of its hazard to normal use, the plaintiff need not prove any particular negligence by the maker in its manufacture or processing; for the manufacturer is presumed to know of the vices in the things he makes, whether or not he has actual knowledge of them." 250 So.2d at 755, 756.

Under *Weber* and its progeny, a plaintiff's *prima facie* case is composed of proof of defectiveness and causation. A product is considered defective, or unreasonably dangerous to normal use, if a reasonable seller would not sell the product if he knew of the risks involved or if the risks are greater than a reasonable buyer would expect. *Welch v. Outboard Marine Corp.,* 481 F.2d 252, 254 (5th Cir. 1973); Robertson, "Manufacturers' Liability for Defective Products in Louisiana Law," 50 *Tul.L.Rev.* 50 (1975). Here the major issue was whether or not the product, *i. e.,* the forward retract rod, was defective. Based on our finding regarding the risks imposed by the presence of the multiple longitudinal cracks, and noting that the retract rod was in normal use, we must conclude that the forward retract arm was defective.

As to causation, there is no doubt that the break in the rod caused the damage to the aircraft. The fundamental question is whether a defect or misrigging caused the

rod to break, and we have resolved this question in favor of the plaintiffs in our Findings of Fact.

Defendant contends that Hairston was contributorily negligent and that this negligence should bar any recovery. Although it was felt by some soon after *Weber* came down that contributory negligence would be a defense to a Louisiana products liability action (see Crawford, "The Work of The Louisiana Appellate Courts for the 1971–72 Term—Torts," 33 *La.L.Rev.* 206 (1973)), the trend appears to be away from allowing ordinary contributory negligence as a defense. *Hastings v. Dis Tran Products,* 389 F.Supp. 1352 (W.D.La.1975); *Khoder v. AMF, Inc.,* 539 F.2d 1078 (5th Cir. 1976); *Dixon v. Gutnecht,* 339 So.2d 1285 (La.App. 1st Cir. 1977). See also Robertson, "Manufacturers' Liability for Defective Products in Louisiana," 50 *Tul.L.Rev.* 50, 67 (1975). In any event, the only evidence of contributory negligence introduced was the *extremely slight* possibility of misrigging, clearly insufficient to justify a finding of contributory negligence on plaintiffs' part.

## B. QUANTUM

Plaintiffs here claim damages for the cost of repairs of the aircraft, for various expenses, and for loss of income or profits.

The cost of repairs and expenses related to transportation, which are connected by the evidence to the accident, clearly are recoverable under *Coe Oil Service, Inc., v. Hair,* 283 So.2d 734 (La.1973), a case involving damage to a small airplane while stopped overnight in Baton Rouge, Louisiana. In another case involving damage to an airplane, *Rader v. Harper Aviation, Inc.,* 246 So.2d 362 (La.App. 4th Cir. 1977), a Louisiana Court allowed recovery of long distance telephone expenses as well as hotel and motel expenses. Moreover, cases involving damages to other types of property indicate that recovery may be allowed for loss of income or loss of profits, but such damages often are disallowed because of the difficulty of proof.

### 1. Cost of Repairs

The following bills were paid in order to return the Duke to airworthy condition, and we feel that the amounts thereof ought to be recoverable:

| | | |
|---|---|---|
| a. | Southern Aviation Corporation (P–11; L & E–2) | $ 3,767.68 |
| b. | Mid States Aircraft Engines (L & E–7) | 7,051.24 |
| c. | United Beechcraft (L & E–4) | 12,217.34 |
| | | $23,036.23 |

London & Edinburg Insurance Company paid $19,975.54 for repairs to the Beech Duke and is entitled to be reimbursed in that amount. Charlie Hairston Aircraft, Inc., the owner of the airplane, is entitled to the $1,000.00 deductible paid by it and the balance of the repair costs, $2,060.69, or a total of $3,060.69.

### 2. Long Distance Telephone Calls

Plaintiffs submitted bills from South Central Bell Telephone Company for the period in question (P–14–15), but no testimony was adduced to indicate which calls were related to the accident and repair of the aircraft. However, we feel that any calls made to Wichita, Kansas (place of repairs by United Beechcraft), and Tulsa, Oklahoma (place of repairs by Mid States), were related to the accident more probably than not. We will allow recovery for the cost of these calls, but we will not allow recovery for the cost of calls made from Shreveport, Wichita, or Tulsa to unidentified numbers, nor will we allow the cost of calls from Wichita or Tulsa to Shreveport, since there was no evidence that these calls were related to the accident.

The cost of calls to Tulsa or Wichita, charged to Hairston's home phone from November 12, 1974, to January 10, 1975, is $100.23. Hairston is entitled to recover that amount. The cost of calls to Tulsa or Wichita, from December 4, 1974, to February 14, 1975, charged to Charlie Hairston Aircraft, Inc., is $36.32. The corporation is entitled to recover that amount.

### 3. Other Expenses

Plaintiffs' Exhibit 15 contains numerous receipts but no testimony identifying these

receipts individually was received. Therefore, only those items clearly related are allowed, and they are allocated to Charlie Hairston:

a. Motel Expenses

| | | |
|---|---|---|
| Sheraton—Wichita | $ 88.05 | |
| Roadside Inn—Tulsa | 25.68 | |
| Roadside Inn—Tulsa | 29.96 | |
| Canterbury Inn—Wichita | 19.46 | $163.15 |

b. Aircraft Oil & Fuel

| | | |
|---|---|---|
| | $ 55.75 | |
| | 67.98 | |
| | 103.12 | $226.85 |

c. Airline Ticket to Wichita  $ 72.74  72.74

$462.74

### 4. Loss of Income and Profits

The only documentary evidence on this issue is P–10 and P–13. P–10 is a letter from the Pillsbury Company of December 7, 1973, confirming a contract for $27,000 guaranteed minimum for 15 hours per month priority time. P–13 is a letter from Hairston to the Mayor of Shreveport outlining the services available from Charlie Hairston Aircraft, Inc. The latter clearly is not allowable. As for the Pillsbury contract, there was no showing that Pillsbury attempted to use the aircraft in December, 1974.

Although an attempt was made, through Hairston's testimony, to prove loss of income for the period during which the airplane was out of service, testimony regarding this was most unclear and uncertain. Attempts at valuation and corroboration were, to our mind, inconclusive, and for us to attempt to award an amount for loss of income or profits would be to engage in speculation. See, e. g., *Craig v. Burch,* 228 So.2d 723 (La.App. 1st Cir. 1969); *Boyles v. Bridgeman,* 342 So.2d 1150 (La.App. 1st Cir. 1977). See also, generally, *Delta Refrigeration Co., Inc., v. Upjohn Co.,* 432 F.Supp. 124 (W.D.La.), aff. *p. c.,* 575 F.2d 879 (5th Cir. 1978).

### C.  CONCLUSIONS

It is our conclusion that plaintiffs have proved their case against defendant on the issue of liability and that there should be judgment against Beech Aircraft Corporation and in favor of Charles Hairston, in the amount of $562.97, in favor of Charlie Hair-

ston Aircraft, Inc., in the amount of $3,097.01, and in favor of London & Edinburg Insurance Company in the amount of $19,975.54, plus costs and interest from date of judicial demand.