Herbert W. WOODY, Jr. et ux., Thomas N. Allmon et ux., Jay Fred Campbell et ux., Robert R. Lowe et ux., J. B. Price et ux., Theodore L. Laws et ux., Charles L. Stephens et ux., Billy Jack Barlow et ux., Edgar Leon Poteet et ux., Lawrence Junior Hatfield et ux., Claude J. Hansard, Larry Allen Potts et ux., James A. Young et ux., Carson B. Keen et ux., Louis Dale Starnes et ux., Earl William Casey et ux., Lloyd W. Bawgus et ux., Don Keen, Lloyd Harold Hughes et ux., Lewis A. Johnson, John Ed Clay et ux., Billy H. Hughes et ux., Marie Clay et vir., Mamie Grace Campbell et vir., Ruth W. Woody et vir., Melvin L. Woody, Clyde Hansard et ux., Dossie Norris et al., Betty Jean Keen et vir., Raymond O. Davis et ux., Johnny E. Ballinger et ux., Janie Sue Ballinger et vir., Cheryl Ballinger Burkhart et vir., Jack Hopper et ux., Franklin D. Sharp et ux., Danna Lee Hopper et ux., Ralph Eugene Headrick et ux., Terry Caney Ellis et ux., Donald Milburn Ellis et ux., Plaintiffs,

v.

COMBUSTION ENGINEERING, INC., Johns-Manville Sales Corp., Johns-Manville Corp., Unarco Industries, Inc., GAF Corp., Standard Asbestos Manufacturing and Insulating Co., Armstrong Cork Company, Raybestos-Manhattan, Inc., the Flintkote Co., Owens Corning Fiberglas Corp., Pittsburgh Corning Corp., the Celotex Corp., Nicolet Industries, a Pennsylvania Corp., Nicolet Industries, Individually & Successor by Merger to Keasbey & Mattison Co., Keene Corporation, a Delaware Corp., Keene Corp., Keene Building Products Corp., Rockwool Manufacturing Co., Inc., Certain-Teed Products Corp., Forty-Eight Insulation Co., Fiberboard Corp., Eagle-Picher Industries, Southern Asbestos Co., Owens-Illinois Glass Co., Empire Ace Insulation Manufacturing Corp., Defendants.

Civ. A. Nos. 3–78–158 to 3–78–163, 3–78–166 to 3–78–169, 3–78–171 to 3–78–175, 3–78–177 to 3–78–193, 3–78–195 and 3–78–200 to 3–78–205.

United States District Court, E. D. Tennessee, N. D.

Oct. 17, 1978.

Robert E. Sweeney, Gilreath, Pryor & Rowland, Knoxville, Tenn., for plaintiffs.

G. W. Morton, Fred H. Cagle, Jr., Earl R. Layman, Louis C. Woolf, William D. Vines, III, J. W. Baker, Jr., William A. Young, Knoxville, Tenn., Hugh J. Moore, Jr., Chattanooga, Tenn., Thomas S. Scott, Jr., F.

Graham Bartlett, Knoxville, Tenn., E. Riley Anderson, Oak Ridge, Tenn., Robert R. Campbell, Knoxville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

The defendant, Nicolet, Inc. ("Nicolet"), has moved for partial summary judgment in a series of related products liability cases arising out of the alleged exposure of the plaintiffs to various asbestos products. In 1962, Nicolet purchased from Keasbey & Mattison Company ("K & M") most of the assets that had been used in K & M's industrial products division. Nicolet argues that it should not be liable for any injuries caused by exposure to products produced and distributed by K & M prior to the purchase. The plaintiffs argue in opposition to the motion that Nicolet, as a successor corporation, should be responsible for K & M's liabilities. An evidentiary hearing on the motion has been held, and briefs have been submitted by both sides.

Plaintiffs suggest that there exist disputed factual issues which render summary judgment inappropriate. While some factual issues are in dispute, in the Court's view all of the facts relevant to a determination of this motion are uncontested.

Prior to 1962, K & M contained several divisions in addition to the one acquired by Nicolet. These other divisions produced the majority of K & M's revenues and earnings. After the sale, Nicolet retained almost all of the production and middle management employees of the industrial products division. Among other assets, Nicolet purchased the good-will and trade name of K & M, as did at least one other corporation. Nicolet utilized the K & M trade name for approximately one year. Nicolet continued to manufacture essentially the same products as had K & M's industrial products division. K & M did no substantial business between the sale in 1962 and its dissolution in 1967.

In diversity cases such as these, a federal court is bound to apply the conflict of laws rule of the forum in which the court sits. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1115 (1941). The general rule in Tennessee is that interpretation of a contract is to be governed by the law which the parties intended. *See Deaton v. Vise*, 186 Tenn. 364, 210 S.W.2d 665 (1948). The agreement between K & M and Nicolet specifically provides that Pennsylvania law shall govern. Accordingly, this Court must interpret the obligations of Nicolet in accordance with Pennsylvania law.

Pennsylvania appears to follow the general rule that "a corporation which purchases the assets of a second corporation is not thereby liable for the obligations of the selling corporation" in the absence of one of four exceptions. *Knapp v. North American Rockwell Corp.*, 506 F.2d 361, 364 (3rd Cir. 1974), *cert. denied*, 421 U.S. 965, 95 S.Ct. 1955, 44 L.Ed.2d 452 (1975). The exceptions to the rule of nonliability occur when: (1) the purchaser expressly or impliedly agrees to assume such obligations; (2) the transaction amounts to consolidation or merger; (3) the purchaser is a mere continuation of seller; (4) the transaction is fraudulently entered into. *See Shane v. Hobam*, 332 F.Supp. 526, 527–28 (E.D.Pa.1971) (applying New York law).

There can be little doubt that as traditionally interpreted K & M's sale to Nicolet does not come within any of these exceptions. There is certainly no suggestion upon this record that the sale of assets was in any way motivated by a desire to avoid liability. The provision in paragraph 12 of the purchase agreement that provides for indemnification by K & M for all liabilities not expressly assumed by Nicolet establishes that the parties did not intend that Nicolet assume liability for defective products manufactured by K & M. Liability of this kind was not expressly assumed by Nicolet in the purchase agreement. *See Shane v. Hobam, supra. See also Lopata v.*

*Bemis Co., Inc.*, 383 F.Supp. 342 (E.D.Pa. 1974), *vacated* 517 F.2d 1398 (3rd Cir. 1975), *on remand*, 406 F.Supp. 521 (E.D.Pa.1975). The mere continuation and merger exceptions, as traditionally understood, also would not apply to this case. In deciding whether to apply these exceptions, courts have looked to the termination of the corporate existence of the seller, continuity of ownership in the successor corporation, and the insubstantial nature of the consideration paid by the buyer for the assets. *See Knapp v. North American Rockwell Corp., supra.* In this case, K & M continued to exist for five years after the sale; K & M shared no common ownership with Nicolet; K & M retained assets from which to satisfy tort claims; and K & M was paid valuable consideration for its assets in a bona fide sale. Under traditional corporate analysis, Nicolet would not be liable for injuries caused by defective products manufactured by K & M.

The plaintiffs recognize this difficulty and urge the Court to follow a series of recent cases which have expanded the liability of successor corporations in products liability actions for defective products manufactured by predecessor corporations. *See generally* Recent Developments, *Products Liability—Liability of Transferee for Defective Products Manufactured by Transferor*, 30 Vanderbilt Law Reviews, 238 (1977) ("Liability of Transferee"). The plaintiffs argue generally that these recent cases are supported by better reasoning and specifically urge that *Knapp v. North American Rockwell Corp., supra*, states the rule to be followed under Pennsylvania law. The Court does not agree that this recent trend to expanded liability for successor corporations is well supported. Even if such a rule is the law in Pennsylvania, however, Nicolet's motion for partial summary judgment must still be granted.

Whether phrased in terms of continuation of the enterprise, *see e. g., Turner v. Bituminous Casualty Co.*, 397 Mich. 406, 244 N.W.2d 873 (1976), or continuation of the product line, *see e. g., Ray v. Alad Corp.*, 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3 (1977), the cases expanding liability of the successor corporation utilize similar reasoning. The cases argue that traditional corporate analysis is inappropriate in the products liability area in which protection for the consumer should be paramount. The consumer who has been harmed will not have available any defendant from which to recover if the successor corporation is not liable. The successor corporation is in the best position to spread the risk and the loss, and to modify the defective product. It is deemed to be unjust that a successor corporation may utilize the trade name and good will of its predecessor while denying liability for its defective products. *See generally Liability of Transferee, supra;* Recent Developments, *Products Liability—Corporations—Asset Sales and Successor Liability*, 44 Tennessee Law Review 905 (1977).

The Court has serious doubts about this reasoning. The corporate stranger which purchases some or all of the assets of a corporation bears no closer relationship to a defective product produced by that predecessor than does any other company in the industry which is producing the same product. Indeed, most of the policies advanced by the courts in support of the rule of expanded liability would be more efficiently advanced by placing liability on the entire industry rather than on the good faith purchaser alone. No court has ever suggested such a result.

The reason that entire industries are not held liable in the products liability area is that even in product liability cases a manufacturer is responsible only for its own actions. Although an injured plaintiff need not show that the defendant was negligent, the plaintiff must show that the product it manufactured was "in a defective condition unreasonably dangerous to the user or consumer. . . ." Restatement of Torts, Second, § 402A. Section 402A does not require a product to be absolutely safe, but only to be "as safe as is reasonably possible

under the present state of the art." *Ellithorpe v. Ford Motor Co.*, 503 S.W.2d 516, 519 (Tenn.1973) (quoting *Larsen v. General Motors Corp.*, 391 F.2d 495 (8th Cir. 1968). The purpose of strict liability is not only to spread the risk of loss, but is also to encourage the manufacturer "to take greater care in designing and manufacturing his products." *Ellithorpe v. Ford Motor Co.*, 503 S.W.2d at 521. Thus, while the manufacturer is not "at fault" in the sense that it is negligent, it is held personally responsible for the level of safety which it has selected. This responsibility cannot idly be cast upon a stranger to the production process. Responsibility for production decisions should remain with the party which made them. For this reason an entire industry is not held liable for the defective products of one company. For the same reason, a simple purchaser of assets should not be liable for the defective products of its predecessor.

The retention of a trade name for a limited period of time and the purchase of good will also do not indicate that a successor corporation should be held liable. The Court does not agree with the argument that holding the successor liable under these circumstances causes the one "who takes the benefit [to] bear the burden." *Ray v. Alad*, 136 Cal.Rptr. at 582, 560 P.2d at 11 (quoting Civ.Code § 3521). The entity which benefitted from the sale of the defective product was the predecessor, not the successor. The predecessor received the profits from the sale of the product which caused the harm, as well as receiving profits from sales of products which, though similarly defective, did not cause harm. The successor does not acquire these profits. The good will and trade name do give the successor an interest in the reputation of the predecessor for excellence in production. The revelation of past production failures injures that reputation and deprives the successor of the only benefit it has purchased. Thus, the successor has lost the benefit of its bargain. A windfall from non-liability comes not to the successor, but rather to the predecessor corporation. Of course, a successor would be liable to a consumer who, relying upon good will and the trade name, purchased a defective product from the successor.

The Court is not insensitive to the plight of a plaintiff injured by a defective product manufactured by a corporation which has dissolved. It may be that all such plaintiffs deserve compensation. That charitable instinct is insufficient, however, to justify holding liable a successor corporation, more or less at random, in order simply that a wealthier party be burdened. It is a fortuity that a predecessor corporation does not dissolve or scatter its assets, in which case no recovery would be possible, rather than sell large portions of its assets to a particular successor. Holding such a successor corporation liable greatly burdens business transfers and turns ordinary business transactions into traps for unwary successor corporations.

Even if the Court were convinced by the policy arguments pressed by the plaintiffs, however, Nicolet could still not be held liable on the facts before the Court. Plaintiffs argue that Pennsylvania law on the question of successor liability is controlled by *Knapp v. North American Rockwell Corp., supra*. The precedential force of *Knapp* is not free from doubt. *Cf. Husak v. Berkel, Inc.*, 234 Pa.Super. 452, 341 A.2d 174 (1975). However, the Court will assume, arguendo, that *Knapp* does state the applicable Pennsylvania law.

The Court in *Knapp* treated a sale of assets as a merger and held the successor corporation liable. The Court was influenced in this decision by the fact that the predecessor corporation continued in existence only eighteen months, was contractually bound to dissolve as soon as possible, was prohibited from engaging in normal business transactions, and retained only assets sufficient for the expenses of transfer. In the case sub judice, K & M continued in existence a far longer period and was under no contractual obligation to dissolve at a certain time. Although K & M in the pur-

chase agreement affirmed its intention to cease to do business, plaintiffs have not shown that K & M was, during this interim, a mere shell with insufficient assets to satisfy possible tort liability.

Three other factors serve to distinguish this case from *Knapp.* The consideration in *Knapp* consisted of stock of the successor corporation. Thus, some continuing link between successor and predecessor was forged. Second, the plaintiff in *Knapp* was "confronted with the melancholy prospect of being barred from his day in court" if the defendant had not been held liable. 506 F.2d at 368. The potential liability Nicolet seeks to escape constitutes only a minor portion of the recovery sought by plaintiffs in these products liability suits. Furthermore, other defendants appear to be potentially jointly liable for the injuries allegedly caused by K & M's defective products. Finally, the successor in *Knapp* acquired almost all of the assets of the predecessor. Nicolet, on the other hand, acquired only a small portion of the assets of K & M.

Continuation of the enterprise is an important factor in most of the cases expanding successor liability. *See Turner v. Bituminous Casualty Co., supra. Cyr v. Offen & Co., Inc.,* 501 F.2d 1145 (1st Cir. 1974); *but cf. Ray v. Alad Corp., supra.* K & M has been fragmented to such an extent that two successor corporations shared for a time the right to use the K & M trade name. Continuity of K & M is clearly lacking.

Nicolet did acquire substantially all of the assets of the division responsible for the allegedly defective products. However, this factor should not be considered significant. Had the other divisions of K & M continued to function, as they certainly could have done, clearly K & M rather than Nicolet would be liable for its defective products. Given the fact that liability would have rested upon the entire corporate structure of K & M, there is no reason to hold Nicolet solely responsible because of the purchase of one fragment of K & M while not holding liable other successor corporations, which acquired other fragments.

For the foregoing reasons, it is ORDERED that Nicolet's motion for partial summary judgment be, and the same hereby is, granted.

Order Accordingly.