**CORPORATE AIR FLEET OF TENNESSEE, INC.; C.A.F.T., Inc.; Aircraft Management, Inc.; National Insurance Exchanges; Underwriters Insurance Exchange; James F. Chavers; and Linda Chavers**

v.

**GATES LEARJET, INC.**

No. 80–3257.

United States District Court,
M.D. Tennessee,
Nashville Division.

May 10, 1984.

Roger A. Milam, Jr. Nashville, Tenn., for plaintiffs.

E. Cliff Knowles, Nashville, Tenn., and Gary Westerberg, Chicago, Ill., for defendant.

## MEMORANDUM

JOHN T. NIXON, District Judge.

This diversity case is before the Court upon the parties' cross-motions for partial summary judgment. Jurisdiction of this Court exists pursuant to 28 U.S.C. § 1332. In a diversity action, the law to be applied is the law of the forum state. *See Erie Railroad Company v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This case presents an issue of first impression in the state of Tennessee and therefore the holding herein will not necessarily serve as binding precedent for future decisions of the Tennessee state courts.

Plaintiffs seek a ruling that (1) loss of use is recoverable in Tennessee as an element of property damage in an action based upon strict liability and negligence; and (2) if recoverable, the measure of damages for loss of use of a damaged chattel is the fair rental value of the chattel. The defendant Gates Learjet opposes plaintiffs' motion and urges in an independent motion that, as a matter of law, plaintiffs cannot recover damages for repairs to the aircraft involved in this action under a theory of negligence or strict liability. For the reasons that follow, plaintiffs' motion is GRANTED in part and DENIED in part and defendant's motion is hereby DENIED. This case will be tried on June 18, 1984, at 9:00 a.m., pursuant to the Agreed Order of October 28, 1983.

On January 24, 1979, a Model 24D Learjet crashed upon landing at the airport in Youngstown, Ohio. The aircraft was owned by plaintiffs James F. and Linda Chavers. It was managed for the Chavers by plaintiff Aircraft Management, Inc., who leased the Learjet to plaintiff Corporate Air Fleet of Tennessee, Inc. As a result of the crash, the aircraft was out of service from the date of the accident until approximately December 15, 1979, a period of nearly eleven months.

### I.

The doctrine of strict liability was first applied in a products liability fact situation in *Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963). That court held that a manufacturer is strictly liable when a product he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being. 27 Cal.Rptr. at 700, 377 P.2d at 900. Although the doctrine of strict liability has been applied most frequently in personal injury or wrongful death cases, it has also been held applicable in actions based solely upon property damage. *See, e.g., Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 24, 403 P.2d 145, 152 (1965) (strict liability in tort applies to physical harm to property as well as to personal injuries). This liability for defective products is "strict" in that it is unnecessary to prove the defendant's negligence, and because the liability is "in tort," the defendant cannot avail himself of the usual contract or warranty defenses, such as lack of privity of contract, which might be at his disposal in an action for breach of warranty. 63 Am.Jur.2d *Products Liability* § 123 (1972). *See also Commercial Truck & Trailer Sales v. McCampbell,* 580 S.W.2d 765, 772 (Tenn.

1979) (privity of contract not required in action for property damage or personal injury predicated on negligence, strict liability or breach of warranty); *Motley v. Fluid Power of Memphis, Inc.,* 640 S.W.2d 222, 226–27 (Tenn.App.1982) (privity not required in action brought under theories of strict liability in tort, negligence or breach of warranty).

■ The rationale supporting the imposition of strict liability is to insure that the costs of injuries resulting from defective products are borne by those who market such products, rather than by the injured persons, who are powerless to protect themselves. *Greenman,* 377 P.2d at 901. This vehicle of public policy is designed to protect the small consumer and to allocate the risk of loss to the entity most able to bear it, namely, the manufacturer. *Scandinavian Airlines System v. United Aircraft Corp.,* 601 F.2d 425, 428 (9th Cir. 1979). It is not only intended to spread the risk of loss, but is also to encourage the manufacturer "to take greater care in designing and manufacturing his products." *Ellithorpe v. Ford Motor Co.,* 503 S.W.2d 516, 521 (Tenn.1973). *See also Woody v. Combustion Engineering, Inc.,* 463 F.Supp. 817, 821 (E.D.Tenn.1978). The manufacturer is in a position to pass the loss on to the ultimate consumer thereby spreading the loss over a broad commercial stream. *Id.* (citing *Kaiser Steel Corp. v. Westinghouse Electric Corp.,* 55 Cal. App.3d 737, 748, 127 Cal.Rptr. 838, 845 (1976)).

■ The doctrine of strict liability has been approved in the Second Restatement of Torts § 402A, which provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A (1965). Tennessee has embraced the concept of strict liability and section 402A has been cited with approval in numerous cases. *See, e.g., Ellithorpe v. Ford Motor Co.,* 503 S.W.2d 516 (Tenn.1973); *Olney v. Beaman Bottling Co.,* 220 Tenn. 459, 418 S.W.2d 430 (1967).

■ Section 402A requires the plaintiff to establish that the product, when it left the hands of the manufacturer or other suppliers, was at that time in both a defective and an unreasonably dangerous condition. *Ford Motor Co. v. Lanon,* 217 Tenn. 400, 398 S.W.2d 240, 249 (1966). A manufacturer's strict liability may be based on a defect in design as well as on a defect in manufacture, if such defect makes the product unreasonably dangerous. *See Burton v. Smith Foundry Products Co.,* 529 F.2d 108, 110 (7th Cir.1976); Keeton, *Products Liability,* 50 F.R.D. 338 (1970) (excerpt from proceedings of the Sixth Circuit Judicial Conference).

■ In Tennessee, recovery for property damage under a theory of strict liability is permitted regardless of privity requirements. TENN.CODE ANN. § 29–34–104 provides:

*Privity Not Required.*—In all causes of action for personal injury or property damage brought on account of negligence, strict liability or breach of warranty, including actions brought under the provisions of the Uniform Commercial Code, privity shall not be a requirement to maintain said action.

The issue before the Court is what is contemplated by the term "property damage." It is plaintiffs' contention that the loss of use of the Learjet for eleven months is an

element of property damage within the meaning of TENN.CODE ANN. § 29–34–104 and the Restatement (Second) Torts § 402A (1966). Conversely, the defendant maintains that damages for loss of use of the aircraft are not recoverable pursuant to a strict liability theory because loss of use constitutes an economic loss, which is not recoverable under a strict liability theory in Tennessee.

■ It is clear beyond peradventure that Tennessee law does not permit recovery under a theory of strict liability for solely economic losses. *See Hailey v. Schultz,* Products Liability Reports (CCH) ¶ 8575 (Tenn.Ct.App. Aug. 3, 1979). Tennessee is in the majority of states that have denied such recovery. *See, e.g., Posttape Associates v. Eastman Kodak Co.,* 537 F.2d 751 (3rd Cir.1976) (Pennsylvania law); *Fredonia Broadcasting Corp. v. RCA Corp.,* 481 F.2d 781 (5th Cir.1973) (Texas law); *Southwest Forest Industries, Inc. v. Westinghouse Electric Corp.,* 422 F.2d 1013 (9th Cir.1970) (Pennsylvania law), *cert. denied,* 400 U.S. 902, 91 S.Ct. 138, 27 L.Ed.2d 138 (1979); *Midland Forge, Inc. v. Letts Industries, Inc.,* 395 F.Supp. 506 (N.D.Iowa 1975) (Iowa law); *Arizona v. Cook Paint & Varnish Co.,* 391 F.Supp. 962 (D.Ariz.1975) (noting that under law of Arizona, California, Hawaii, Texas or Alaska, economic loss is not recoverable in a strict liability action), *aff'd,* 541 F.2d 226 (9th Cir.1976), *cert. denied,* 430 U.S. 915, 97 S.Ct. 1327, 51 L.Ed.2d 593 (1977); *Noel Transfer & Package Delivery Services, Inc. v. General Motors Corp.,* 341 F.Supp. 968 (D.Minn.1972) (Minnesota law); *Hiigel v. General Motors Corp.,* 190 Colo. 57, 544 P.2d 983 (1975); *Price v. Gatlin,* 241 Or. 315, 405 P.2d 502 (1965); *Mike Bajalia, Inc. v. Amos Construction Co.,* 142 Ga.App. 225, 235 S.E.2d 664 (1977); *Alfred N. Koplin & Co. v. Chrysler Corp.,* 49 Ill.App.3d 194, 7 Ill. Dec. 113, 364 N.E.2d 100 (1977). *But see Mead Corp. v. Allendale Mutual Insurance Co.,* 465 F.Supp. 355, 366 (N.D.Ohio 1979) (recovery permitted for economic loss under Ohio law pursuant to theory of strict liability); *City of La Crosse v. Schubert, Schroeder & Associates, Inc.,* 72 Wis.2d 38, 240 N.W.2d 124, 127 (1976) (loss of profits recoverable in a strict liability action in Wisconsin); *Santor v. A. & M. Karagheusian, Inc.,* 44 N.J. 52, 207 A.2d 305, 312 (1965) (plaintiff allowed to recover direct economic loss under a strict liability theory in New Jersey); *Cova v. Harley Davidson Motor Co.,* 26 Mich.App. 602, 182 N.W.2d 800 (1970) (Michigan consumer may recover damages for economic loss from manufacturer without proving negligence).

In *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965), the plaintiff had purchased a truck manufactured by the defendant. After several months of unsuccessful attempts to correct a violent bouncing effect whenever the truck was driven, the truck overturned when the brakes failed. Plaintiff, who suffered no personal injury, sought damages "for the profits lost in his business because he was unable to make normal use of the truck." *Seely,* 45 Cal.Rptr. at 20, 403 P.2d 145. The court held that while plaintiff could recover damages for lost profits pursuant to a breach of warranty theory, he could not recover under a theory of strict liability.

> The law of sales has been carefully articulated to govern the economic relations between suppliers and consumers of goods. The history of the doctrine of strict liability in tort indicates that it was designed, not to undermine the warranty provisions of the sales act or of the Uniform Commercial Code but, rather, to govern the distinct problem of physical injuries.

45 Cal.Rptr. at 21, 403 P.2d 145.

In *Hailey v. Schultz,* Products Liability Reports (CCH) ¶ 8575 (Tenn.Ct.App. Aug. 3, 1979), the Tennessee Court of Appeals noted the significance of defining the scope of a manufacturer's liability for his product:

> The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the "luck" of one plaintiff in having an accident causing a physical injury. The

distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone.

*Hailey*, slip op. at 5 (quoting *Seely v. White Motor Co.*, 63 Cal.2d 9, 45 Cal.Rptr. 17, 23, 403 P.2d 145 (1965)). In *Rouse v. Livesay Bros., Inc.*, Products Liability Reports (CCH) ¶ 9257 (Tenn.Ct.App. Mar. 10, 1982), plaintiff sued defendants alleging that a hay mower manufactured by the defendant Massey-Ferguson would not work properly. Plaintiff sued "for economic loss by virtue of lost profits resulting from his being deprived of the use of the machine during the 1979 mowing season." *Id.* at 21, 926. Under the facts, no privity existed between the parties. The plaintiff argued that privity was not required in that its loss was an element of "property damage" under TENN.CODE ANN. § 29–34–104. The court, in construing the action as one involving purely an economic loss, dismissed the case for lack of privity. "[T]he statute removes the requirement of privity only in cases of personal injury and property damage. Since the case at bar embraces neither of these elements, but involves economic loss, the requirements of privity are still viable." *Id.* at 21, 927.

■■■■ Ownership of an item of property carries with it the right to use, or to control the use of, that item of property. 22 Am.Jur.2d *Damages* § 152 (1965). Therefore, when a defendant tortiously injures an item of property, a valuable right or interest is lost—the right to use that property. *See Koninklijke v. United Technologies Corp.*, 610 F.2d 1052, 1056 (2d Cir.1979). Recovery for the value of the loss of use of a chattel constitutes a separate item of damages when that chattel has been injured through the tortious conduct of the defendant and is reparable. *See, e.g., Perkins v. Brown*, 132 Tenn. 294, 296, 177 S.W. 1158, 1159 (1915). Moreover, recovery for loss of use in the case of reparable chattels is permitted whether the chattel was used for commercial or pleasure purposes. *Duling v. Burnett*, 22 Tenn.App. 522, 124 S.W.2d 294, 305 (1939) (plaintiff allowed to recover for loss of use of milk truck used in plaintiff's business); *Norvell v. Wallace*, 14 Tenn.App. 62, 66 (1931) (plaintiff permitted to recover for loss of use of car used in his medical practice). *See also Koninklijke*, 610 F.2d at 1056.

■■■■ Although it is clear that a plaintiff may recover for the loss of use of a chattel under a theory of negligence, it is the opinion of this Court that such loss of use does not fall within the purview of "property damage" so as to allow recovery pursuant to a theory of strict liability. *Perkins* and *Duling* both involved incidents arising from simple negligence, and did not seek to impose liability on a manufacturer for injury to a plaintiff's person or property. Section 402A is intended to insure that the costs of injuries resulting from dangerous and defective products are borne by the manufacturer rather than by the injured person, and does not contemplate consequential damages arising from a plaintiff's inability to utilize the product while it is being repaired. The theory of strict liability is not exclusive, and does not preclude liability based upon the alternative ground of negligence of the seller, when such negligence can be proved. Restatement (Second) of Torts § 402A com-

ment a (1965). Consequently, it is this Court's conclusion that the plaintiffs may pursue their remedy for the loss of use of the aircraft under a theory of negligence, but that they are precluded from recovery of loss of use pursuant to a strict liability theory under the circumstances of this case.

## II.

 The Court now turns to the question of the proper measure of damages when a plaintiff is negligently deprived of the use of a chattel. The purpose of awarding damages is to compensate for damages actually incurred, not to provide a plaintiff with a windfall. In *Koninklijke*, the lessee of an aircraft brought a products liability action against participants in the design and manufacture of the aircraft's engine which exploded. The Second Circuit held that the owner or lessee of a commercial vehicle may recover loss of use damages based on the rental value of a substitute vehicle. 610 F.2d at 1056. These damages for loss of use were held to be recoverable without proving that actual financial loss was suffered and without proving that the plaintiff needed a substitute aircraft to cover the loss of the damaged one. *Id.* However, the *Koninklijke* court restricted plaintiff's recovery to the amount of rental "actually paid for the period during which the ... aircraft was out of service ...." *Id.* Consequently, this Court is not persuaded by the language in *Koninklijke* intimating that actual financial loss need not be proved. *Id.* It is the opinion of this Court that the plaintiff may recover damages for the loss of use of its aircraft due to the negligence of the defendant based upon the reasonable rental value of a substitute aircraft; however, such a recovery is limited to the time in which a substitute plane was actually rented. *See, e.g., Young v. Servair*, 33 Mich.App. 643, 190 N.W.2d 316, 317 (1971) (plaintiff entitled to recover for cost of rental airplane only during time which a substitute was actually rented); *Radar v. Harper Aviation, Inc.*, 246 So.2d 362, 365 (La.App.1971) (when no replacement air-

craft was rented, damages based upon rental value were not awarded). The plaintiffs cannot be awarded damages for losses they did not incur.

## III.

 It is the defendant's contention that plaintiffs, as a matter of law, cannot recover damages for repairs to the aircraft under a theory of negligence or strict liability. The courts are unanimous in holding that the Restatement (Second) of Torts § 402A allows recovery for physical harm caused to the ultimate user or consumer or to his property when the damaged property is other than the defective product itself. Damage to the product itself—sometimes characterized as economic or indirect loss— is recoverable in a majority of jurisdictions at least where the damage occurred as a result of a sudden, violent event and "not as a result of an inherent defect that reduced the property's value without inflicting physical harm to the product." *National Crane Corp. v. Ohio Steel Tube Co.*, 213 Neb. 782, 332 N.W.2d 39, 43 (1983). *See also Star Furniture Co. v. Pulaski Furniture Co.*, 297 S.E.2d 854 (W.Va.1982). *Accord Northern Power and Engineering Corp. v. Caterpillar Tractor Co.*, 623 P.2d 324 (Alaska 1981). In *Seely*, Justice Traynor concluded his opinion by recognizing that strict liability in an appropriate case applies to the product itself.

Plaintiff contends, that, even though the law of warranty governs the economic relations between the parties, the doctrine of strict liability in tort should be extended to govern physical injury to plaintiff's property, as well as personal injury. We agree with this contention.

63 Cal.2d at 19, 45 Cal.Rptr. at 24, 403 P.2d at 152.

In *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77 (Tex.1977), the Texas Supreme Court adopted the rule that economic loss resulting from a product with defective workmanship and materials is not recoverable in strict liability. *Id.* at 80.

*Nobility Homes* involved a plaintiff seeking to recover from the manufacturer of a mobile home he had purchased as a result of defects in the mobile home. The court construed that loss as merely loss of value resulting from a failure of the product to perform according to the contractual bargain and therefore was governed by the UCC. *Id. See also Long Mfg., Inc. v. Grady Tractor Co.,* 140 Ga.App. 320, 231 S.E.2d 105 (1976); *Morrow v. New Moon Homes, Inc.,* 548 P.2d 279 (Alaska 1976). One year later in *Mid Continent Aircraft Corp. v. Curry County Spraying Service, Inc.,* 572 S.W.2d 308 (Tex.1978), the buyer of a rebuilt airplane brought an action against the seller when the airplane crashed due to an engine malfunction. As in the instant case, there was no personal injury and no property other than the aircraft itself was damaged. At trial, plaintiff was awarded compensation for the damage to the airplane and for its loss of use. The sellers of the airplane, found to be in the business of selling a product with a defect that rendered it unreasonably dangerous, were held liable under a theory of strict liability. *Id.* at 310.

■ On appeal, the Texas Supreme Court addressed the issue of whether, in a commercial sale, strict liability should be extended to cover loss resulting from damage to the product itself. *Id.* at 311. The court, citing *Nobility Homes,* observed that economic loss resulting from a product with defective workmanship and materials is not recoverable in strict liability—that type of loss is instead the result of a failure of the product to perform in accordance with the contractual bargain and therefore is governed by the UCC. This Court cannot agree with that analysis. In *Nobility Homes,* the reason that strict liability did not apply was that the proof failed to establish a defect that was unreasonably dangerous. 557 S.W. at 80. In *Mid Continent,* although the aircraft was determined to have a defect that rendered it unreasonably dangerous, 572 S.W.2d at 310, the court construed the property damage as economic loss and rejected the plaintiff's theory of strict liability. It is the findings of defect and unreasonable danger that make *Mid Continent* a case for strict liability, where the absence of such findings makes *Nobility Homes* an action in contract. *See Mid Continent,* 572 S.W.2d at 315 (Pope, J., dissenting). *Compare Santor v. A. & M. Karagheusian, Inc.,* 44 N.J. 52, 207 A.2d 305 (1965). Consequently, it is the opinion of this Court that if a product is defective so as to be unreasonably dangerous and the only property damage is to the product itself, a plaintiff may pursue recovery under a theory of strict liability.

■ A distinction must be drawn between damage resulting from physical injury to property and that resulting from the purchase of unsatisfactory products. Tort law has traditionally been concerned with compensation for injury to person or property whereas contract law has been concerned with the agreements parties enter into by mutual obligation. Physical harm to the defective product belongs with tort principles; reduction in value due to an inherent flaw in the product falls within the realm of contract law. *See, e.g., Star Furniture Co. v. Pulaski Furniture Co.,* 297 S.E.2d at 859.

Two cases decided by the Alaska Supreme Court are illustrative of the necessity of the differences in types of damage and the importance of distinguishing between tort and warranty causes of action. In *Morrow v. New Moon Homes, Inc.,* 548 P.2d 279 (Alaska 1976), plaintiff discovered that the mobile home he had purchased had a leaky roof, an inoperable furnace, cracked windows and various other inconveniences. *Id.* at 281–82. Although such conditions were not pleasant, the problems posed no threat to life or property. The court rejected plaintiff's strict liability theory and relegated plaintiff to employ a theory of warranty to recover for breach of the sales contract. *Id.* at 285–86. In contrast, plaintiff's mobile home in *Cloud v. Kit Mfg. Co.,* 563 P.2d 248 (Alaska 1977), was destroyed by fire when foam padding was ignited by a heating unit. The fire caused no personal injury and the issue

presented to the court was whether the destruction of the mobile home constituted property damage so as to be recoverable under a theory of strict liability, or merely an economic loss, which is governed by the Uniform Commercial Code. *Id.* at 251. Noting that the damage to the product was the result of a sudden and calamitous occurrence, the court permitted the plaintiff to proceed with a strict liability action against the home manufacturers. *Id.*

> We note that the harm alleged in this case is much different from that alleged by the Morrows in *New Moon*. The Morrows' trailer was allegedly defectively manufactured, but the defects resulted in a deprivation of the value of the Morrows' bargain. Unlike the circumstances in the case at bar, the Morrows were plagued by a "lemon," not an unsafe product. The Morrows' trailer was not suited for the purpose for which it was purchased, but the defects in it were not such that they resulted in sudden, violent or calamitous harm. Having been deprived of the intended use of their product, the harm in that case was properly classified as economic loss.

*Id.*

■ An action is one in tort, not contract, when it is established that there was an accident, caused by a defective product, that is unreasonably dangerous to the user or to his property. In this regard, damage to the product itself satisfies the "physical harm" to the ultimate user or consumer's property required by section 402A. The damage present in *New Moon* and other intrinsic value cases is not physical harm, but merely the result of purchasing a flawed product. Consequently, defendant's motion that plaintiffs, as a matter of law, cannot recover damages for repairs to the aircraft under a theory of strict liability in tort, is OVERRULED.

### CONCLUSION

For the reasons discussed above, it is the conclusion of this Court that (1) damages for loss of use are not recoverable under a theory of strict liability; (2) the reasonable rental value actually paid for a substitute aircraft is recoverable in a negligence action for loss of use; and (3) damages for repairs to the aircraft itself may be recoverable under a theory of strict liability. An appropriate ORDER shall enter.