**Daniel S. CLOUD and Valerie S. Cloud, Petitioners,**

v.

**KIT MANUFACTURING COMPANY, a California Corporation, and Glenn Lester, d/b/a Lester Mobile Homes, Respondents.**

**No. 3124.**

Supreme Court of Alaska.

April 29, 1977.

---

13. *Id.*

14. *Id.*

15. *Id.*

Herbert A. Ross, Anchorage, for petitioners.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

## OPINION

RABINOWITZ, Justice.

The single issue raised in this petition for review is the propriety of a claim for relief for strict liability in tort to redress direct property damage in the absence of any claim for personal injuries. We have granted review in order to clarify our opinion in *Morrow v. New Moon Homes, Inc.*, 548 P.2d 279 (Alaska 1976), to reflect that strict liability encompasses direct property damage actions.

In June 1975, the Clouds brought suit against Glenn Lester, d/b/a Lester Mobile Homes, a mobile home dealer, and Kit Manufacturing Company, a mobile home manufacturer, for damages allegedly suffered when their mobile home and its contents were destroyed by fire. The complaint sets forth the following factual situation.

In October 1973, the Clouds had purchased a mobile home from Lester Mobile Homes which had been manufactured by Kit Manufacturing. The Clouds were supplied with carpeting, including polyurethane foam rug padding, as a part of their "mobile home package." In early January 1974, the Clouds stored a roll of this padding in a crawl space beneath their mobile home. They alleged that the roll was not placed in close proximity to the electric heating unit which was used to prevent freezing of the water pipes. On January 23, 1974, the rug pad ignited, causing the mobile home to catch fire and burn. The fire department was unable to extinguish the fire, and thus the petitioners' trailer, personal belongings, furniture, apparel and jewelry were destroyed. The Clouds contend that the rug pad was a defective product because of its highly flammable nature, and that the highly flammable nature of the mobile home itself was a design defect.

The complaint asserted three theories for recovery: strict liability in tort, express and implied warranties, and negligence. Kit Manufacturing moved for summary judgment as to the claim for relief in strict liability which was granted. In support of

its motion, Kit Manufacturing relied primarily on our decision in *New Moon* where we stated:

> By its terms the *Greenman* [*v. Yuba Power Products, Inc.*, 59 Cal.2d 57, 377 P.2d 897, 27 Cal.Rptr. 697 (Cal.1962)] formulation applies only when the defective product causes personal injury. Since the Morrows did not sustain any personal injuries which were caused by the defects in their mobile home, strict liability is seemingly unavailable to them in the instant case.[1]

The superior court held that this language precluded petitioners' claim for relief which was based upon strict liability for property damage and thus entered summary judgment against petitioners on this particular theory. The Clouds thereafter petitioned this court for review of the superior court's grant of summary judgment.

We have previously recognized a claim for relief in strict liability for personal injuries caused by defective products[2] and in warranty for direct economic loss caused by defective products.[3] This petition raises a first impression question as to whether a claim for relief sounding in strict liability will lie for damage to property. Many of the courts in the United States which have been presented with this question have ruled that strict liability actions in tort for direct property damage can be maintained.[4]

In *Seely v. White Motor Co.*, 63 Cal.2d 9, 403 P.2d 145, 152 (1965), Chief Justice Traynor, writing for the Supreme Court of California, stated:

> Plaintiff contends that, even though the law of warranty governs the economic relations between the parties, the doctrine of strict liability in tort should be extended to govern physical injury to plaintiff's property, as well as personal injury. We agree with this contention. Physical injury to property is so akin to personal injury that there is no reason for distinguishing them.[5]

We agree that direct physical injury to property and personal injury should be treated similarly in the resolution of products liability litigation. As we noted in *Clary v. Fifth Avenue Chrysler Center, Inc.*, 454 P.2d 244, 248 (Alaska 1969), that "[t]he purpose of imposing such strict liability on the manufacturer and retailer is to insure that the cost of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves." A similar need arises when the consumer's property rather than person is damaged due to a

---

1. 548 P.2d at 283. In its decision on the summary judgment motion, the court stated in part: .

   > As the court reads the *Morrow* case, the Supreme Court has in this Court's judgment taken the position that the adoption of the Uniform Commercial Code had established remedies available to litigants and that strict liability is not available absent claim for personal injury.

2. In *Clary v. Fifth Ave. Chrysler Center, Inc.*, 454 P.2d 244, 247 (Alaska 1969), we adopted the approach of the California Supreme Court in *Greenman v. Yuba Power Prods., Inc.*, 59 Cal.2d 57, 377 P.2d 897, 900, 27 Cal.Rptr. 697, 700 (Cal.1962), in holding that:

   > A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being.

3. In *Morrow v. New Moon Homes, Inc.*, 548 P.2d at 291 we held that:

   > [T]here is no satisfactory justification for a remedial scheme which extends the warranty action to a consumer suffering personal injury or property damage but denies similar relief to the consumer 'fortunate' enough to suffer only direct economic loss.

4. *See, e. g., Seely v. White Motor Co.*, 63 Cal.2d 9, 403 P.2d 145, 152 (1965); *Suvada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182, 186–88 (1965); *Weber v. Fidelity & Cas. Ins.· Co.*, 259 La. 599, 250 So.2d 754 (La.1971); *State Stove Mfg. Co. v. Hodges*, 189 So.2d 113, 118–20 (Miss.1966), *cert. denied*, 386 U.S. 912, 87 S.Ct. 860, 17 L.Ed.2d 784 (1967); *Rosenau v. City of New Brunswick*, 51 N.J. 130, 238 A.2d 169 (N.J.1968); *O. M. Franklin Serum Co. v. C. A. Hoover & Son*, 418 S.W.2d 482 (Tex.1967).

5. *See also* Prosser, *The Assault Upon the Citadel*, 69 Yale L.J. 1099, 1143 (1960).

defect in the manufacture of the particular product.[6]

Having thus determined that a claim for relief in strict liability in tort for direct property damage lies, it remains necessary to decide if the allegations in the Clouds' complaint sufficiently allege a claim for relief sounding in strict liability for property damages. The primary problem which arises results from the attempt to distinguish between economic loss and direct property damage.[7] We recognize that the line between economic loss and direct property damage is not always easy to discern, particularly when the plaintiff is seeking compensation for loss of the product itself. We cannot lay down an all inclusive rule to distinguish between the two categories; however, we note that sudden and calamitous damage will almost always result in direct property damage and that deterioration, internal breakage and depreciation will be considered economic loss.[8] In their attempts to distinguish between direct property damage and economic loss, the courts should be guided by the existence of, and underlying purposes for, the Uniform Commercial Code warranty actions.

■ Turning then to the circumstances alleged in the Clouds' complaint, we must determine whether any part of their claimed harm was economic loss. We note,

first, that the damage to the product, the trailer package, was the result of a sudden and calamitous occurrence, the fire. Accordingly, we hold that the damage to the product in this case was direct property damage. The damage alleged in the complaint to the Clouds' personal belongings, furniture, apparel and jewelry is direct damage to their personal property and thus is compensable if proven to be attributable to a defect in the product as manufactured by Kit Manufacturing. We note that the harm alleged in this case is much different from that alleged by the Morrows in *New Moon*. The Morrows' trailer was allegedly defectively manufactured, but the defects resulted in a deprivation of the value of the Morrows' bargain. Unlike the circumstances in the case at bar, the Morrows were plagued by a "lemon," not an unsafe product. The Morrows' trailer was not suited for the purpose for which it was purchased, but the defects in it were not such that they resulted in sudden, violent or calamitous harm. Having been deprived of the intended use of their product, the harm in that case was properly classified as economic loss.

In light of the foregoing, we reverse the superior court's grant of summary judgment on the strict liability count and remand the case for further proceedings.

---

**6.** The Restatement (Second) of Torts § 402A (1965) provides for strict liability suits when a defective product causes injury "to the ultimate user or consumer, or to his property. . . ." Although in *Clary* we adopted the simpler approach of *Greenman* over the Restatement approach, insofar as the Restatement recognizes the similarity between suits for physical injury and direct property damage we find it persuasive.

**7.** *See* Note, *Economic Loss in Products Liability Jurisprudence*, 66 Colum.L.Rev. 917, 918 (1966).

This analysis is necessary because we held that we would not recognize a cause of action in strict liability for economic loss in *New Moon*, 548 P.2d at 286.

**8.** In *Economic Loss, supra* note 7, at 918, the distinction between economic loss and property damage is described as follows:

Property damage is usually readily distinguishable from economic loss. For example,

operation of a defective radiator causes property damage when it results in a fire which destroys the plaintiff's store and economic harm when it results in conditions so uncomfortable that it causes the loss of customer patronage. . . . If the damage is to the defective product itself, similar distinctions must be drawn. When the defect causes an accident 'involving some violence or collision with external objects,' the resulting loss is treated as property damage. On the other hand, when the damage to the product results from deterioration, internal breakage, or other non-accidental causes, it is treated as economic loss. (footnote omitted)

*See also States S.S. Co. v. Stone Manganese Marine, Ltd.*, 371 F.Supp. 500, 504–05 (D.N.J. 1973); *Gherna v. Ford Motor Co.*, 246 Cal. App.2d 639, 55 Cal.Rptr. 94 (Cal.App.1966). *See generally Fentress v. Van Etta Motors*, 157 Cal.App.2d Supp. 863, 323 P.2d 227, 229 (1958).