39953. VULCAN MATERIALS COMPANY, INC. v. DRILTECH, INC.

MARSHALL, Presiding Justice.

This case comes to us on certified questions from the Eleventh Circuit Court of Appeals. These are the facts:

In 1976, Vulcan Materials Company, Inc., purchased a rotary blast hole drilling machine for use in its rock quarry near Kennesaw, Georgia. The machine was manufactured by Driltech, Inc. In 1978, a cast iron bushing in the machine's compressor system fractured, releasing a spray of hydraulic fluid. This spray was ignited by the heat of the engine, and the machine burst into flames. The drill operator was in the cabin of the machine when the fire started and was almost immediately surrounded by flames, but he managed to escape without injury. The drill was damaged beyond repair, but the fire caused no personal injury or damage to property other than the drill.

In 1981, Vulcan brought this suit against Driltech in federal district court, seeking damages for the loss of the use of the drill. Recovery was sought under theories of negligence and breach of warranty. The district court ruled that the warranty claims are barred by the statute of limitations and that the negligence claim is barred by the fact that there was neither personal injury nor damage to property other than the drill.

On appeal to the federal appellate court, the following two questions have been certified to us: (1) Under Georgia law, is there an "accident" exception to the general rule that an action in negligence

does not lie absent personal injury or damage to property other than to the allegedly defective product itself? Cf. *Long Mfg., &c., Inc. v. Grady Tractor Co.,* 140 Ga. App. 320 (231 SE2d 105) (1976), with *Long v. Jim Letts Olds.,* 135 Ga. App. 293 (217 SE2d 602) (1975). (2) If an "accident" exception is recognized under Georgia law, how should this exception be defined? *Held:*

1. As recognized in Flintkote Co. v. Dravo Corp., 678 F2d 942 (5th Cir. 1982), the *Jim Letts* decision is the first Georgia case applying the general rule that, in the absence of an accident, there can be no action in negligence to recover the loss of the economic value of a defective product, unless there is some personal injury or damage to other property. This is referred to as the economic-loss rule.

*Jim Letts* involved the purchase of an automobile which overheated as a result of defects in the engine. The overheating resulted in gradual deterioration of the engine, causing the purchaser to sell the automobile for less than the "book value." The purchaser then sued the seller and manufacturer in tort, for diminution in value of the car and cost of repairs, among other things. Citing from Prosser, Law of Torts (4th Ed. 1971), p. 665, the Court of Appeals held, " '(W)here there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing it, the courts have adhered to the rule . . . that purely economic interests are not entitled to protection against mere negligence, and so have denied the recovery.' " *Jim Letts,* 135 Ga. App. 293, supra, at p. 295.

2. As further recognized in Flintkote, although the decision of the Georgia Court of Appeals in *Long Mfg.* might appear to be inconsistent with the economic-loss rule espoused in *Jim Letts* and its progeny, it actually falls within the accident exception to the economic-loss rule.

In *Long Mfg.,* the purchaser of a portable tobacco barn was suing the manufacturer in negligence for the difference in value of the barn before and after it had collapsed while being transferred from one site to another. There were no allegations of personal injury or damage to property other than the barn. Although the judgment for the plaintiff was reversed because of an erroneous charge to the jury, it was recognized that under the facts the plaintiff did possess a cause of action against the defendant. *Long Mfg.,* 140 Ga. App. 320, supra, at p. 321.

3. As stated in Flintkote, "This decision [in *Long Mfg.*]can be reconciled with prior and subsequent decisions of the Georgia Court of Appeals only by interpreting it as finding that the plaintiff's losses resulted from an accident because of the sudden collapse of the barn . . . We therefore conclude that *Long Manufacturing* falls within the

accident exception to the economic loss rule. See *Gainous v. Cessna Aircraft Co.,* 491 FSupp. 1345 (N. D. Ga. 1980). Unfortunately, neither *Long Manufacturing* nor any other Georgia decision discusses the nature and scope of the accident exception." (Footnote omitted.) 678 F2d 942, supra, at pp. 947, 948.

Nevertheless, the nature and scope of the economic-loss rule and its accident exception are discusssed in the Flintkote decision itself, as well as in the decisions of other courts.

We find the most comprehensive analysis to be contained in Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co., 652 F2d 1165, 1169-1173 (3d Cir. 1981). "[S]ome courts have concluded that injuries that can be classified as economic loss should not be recoverable in tort. 'Economic loss' has been defined as 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.' Comment, *Manufacturers' Liability to Remote Purchasers for 'Economic Loss' Damages — Tort or Contract?* 114 U. Pa. L. Rev. 539, 541 (1966). This definition of economic loss accords with the policy of warranty law to protect expectations of suitability and quality. The items most frequently sought as damages for unsuitable products are the reduction in value caused by the defect, costs of repair or replacement, and loss of profits.

"This does not mean, however, that every prayer for relief that seeks the cost of repairing a damaged product entails the type of economic loss traditionally encompassed within warranty law. Commentators and several courts have carefully distinguished economic loss from physical harm or property damage. The line that is drawn usually depends on the nature of the defect and the manner in which the damage occurred. Defects of quality, evidenced by internal deterioration or breakdown, are assigned to the economic loss category, while the loss stemming from defects that cause accidents 'of violence or collision with external objects' is treated as physical injury. Tort law traditionally has redressed injuries properly classified as physical harm.

"The seminal case that recognized and applied this distinction is *Seely v. White Motor Co.,* 63 Cal. 2d 9, 403 P.2d 145 (45 Cal. Rptr. 17) (1965). In *Seely* the owner of a truck sued the manufacturer under a breach of warranty theory, seeking a return of the purchase price and profits lost by virtue of a bouncing defect that rendered the truck unusable in his business of heavy-duty hauling. The plaintiff also sought recovery under [strict tort liability] for the costs of repairs incurred when the brakes failed and caused an accident that damaged only the truck. Chief Justice Traynor, writing for the

California Supreme Court, distinguished between recovery for the loss of value from a defect in a product, and damage to the product caused by the defect. He declared that the first type of injury constituted economic loss that was recoverable only under warranty law, because the activity complained of essentially involved a breach of representations of quality or suitability . . . When the defect is of a type that creates a safety hazard, such as the truck's nonworking brakes, 'physical injury to property is so akin to personal injury that there is no reason for distinguishing them.' *Id.* (*citing Prosser, The Assault on the Citadel,* 69 Yale L.J. 1099, 1143 (1960)) . . .

"Courts in most states have followed *Seely* and have held that economic loss caused by qualitative defects cannot be recovered in a tort action . . .

"Economic loss frequently involves only damage to the defective product itself, with no attendant injury to persons or other property. It is sometimes difficult to classify the situation in which the product alone is damaged as properly falling within the confines of either tort or contract law. Most courts, however, have attempted to follow the lines suggested by Dean Prosser and by Chief Justice Traynor in *Seely,* by ascertaining whether the damage constitutes physical harm or merely economic loss.

"The most comprehensive analysis of this distinction occurs in the case of *Cloud v. Kit Mfg. Co.,* 563 P.2d 248 (Alaska 1977). The Clouds purchased a mobile home that came equipped with polyurethane carpet padding. The padding ignited, and the home caught fire and was severely burned. The court framed the issue as that of the propriety of a strict liability tort claim to redress direct property damage in the absence of personal injuries.

"Distinguishing a prior decision in which it had disallowed a tort claim for economic loss caused by a qualitatively deficient mobile home, as one involving a 'lemon' rather than an unsafe product, the Alaska court held that physical injury to property caused by hazardous defects should be treated similarly to personal injuries in products liability litigation. 563 P.2d at 250 . . . The court then suggested that the demarcation between economic loss and property damage must be made with reference to the policies underlying the U.C.C. warranty provisions. Thus, it noted, deterioration and other defects of poor quality should be considered economic loss, whereas 'sudden and calamitous damage will almost always result in direct property damage' recoverable in tort. *Id.* at 251 . . .

"Several principles and trends may be distilled from this analysis of policy and the decisions of other courts. Although strict liability in tort developed out of the law of warranties, the courts of most states have recognized that the principles of warranty law

remain the appropriate vehicle to redress a purchaser's disappointed expectations when a defect renders a product inferior or unable adequately to perform its intended function . . . These courts have classified the damages consequent to qualitative defects, such as reduced value, return of purchase price, repair and replacement, or lost profits, as economic loss, and have relegated those who suffer such commercial loss to the remedies of contract law.

"On the other hand, almost all courts have adopted the view that the benefit-of-the-bargain approach of warranty law is ill-suited to correct problems of hazardous products that cause physical injury. Manufacturers are better able to bear the risk or to take action to correct flaws that pose a danger. *Accordingly, tort law imposes a duty on manufacturers to produce safe items, regardless of whether the ultimate impact of the hazard is on people, other property, or the product itself.* (Emphasis supplied.)

"In cases such as the present one where only the defective product is damaged, the majority approach is to identify whether a particular injury amounts to economic loss or physical damage. In drawing this distinction, the items for which damages are sought, such as repair costs, are not determinative. Rather, the line between tort and contract must be drawn by analyzing interrelated factors such as the nature of the defect, the type of risk, and the manner in which the injury arose. These factors bear directly on whether the safety-insurance policy of tort law or the expectation-bargain protection policy of warranty law is most applicable to a particular claim."

This same analysis is recapitulated in Flintkote, 678 F2d 942, supra, at p. 948: "In summary, the Georgia Court of Appeals has adopted the economic loss rule to distinguish between those causes of action that may be brought only in a contract warranty action and those that give rise to an action in tort. The rule acts as a shorthand means of determining whether a plaintiff is suing for injuries arising from the breach of a contractual duty to produce a product that conforms in terms of quality or performance to the parties['] expectations or whether the plaintiff seeks to recover for injuries resulting from the breach of the duty arising independently of the contract to produce a nonhazardous product that does not pose an unreasonable risk of injury to person or property. The economic loss rule prevents recovery in tort when a defective product has resulted in the loss of the value or use of the thing sold, or the cost of repairing it. Under such circumstances, the duty breached is generally a contractual one and the plaintiff is merely suing for the benefit of his bargain. The rule does not prevent a tort action to recover for injury to other property and persons because the duty breached generally

arises independent of the contract. *Nor does it preclude recovery for damages to the defective product itself, where the injury resulted from an accident."* (Footnote omitted.) (Emphasis supplied.)

4. Thus, the certified questions are answered as follows: (1) Under Georgia law, there is an accident exception to the general rule that an action in negligence does not lie absent personal injury or damage to property other than to the allegedly defective product. (2) An "accident" should be defined as a sudden and calamitous event which, although it may only cause damage to the defective product itself, poses an unreasonable risk of injury to other persons or property.

*Certified questions so answered. All the Justices concur.*

DECIDED SEPTEMBER 7, 1983.

*Hurt, Richardson, Garner, Todd & Cadenhead, Robert L. Todd, R. Dennis Withers, G. Terrell Davis,* for appellant.

*Sutherland, Asbill & Brennan, Charles T. Lester, Jr., Thomas A. Cox, Thomas A. Varlan,* for appellee.