**ROXALANA HILLS, LTD., Plaintiff,**

v.

**MASONITE CORPORATION, et al., Defendants.**

**and**

**DIAMOND HILL PLYWOOD COMPANY, Plaintiff,**

v.

**EMPLOYERS INSURANCE OF WAUSAU, Defendant.**

**Civ. A. Nos. 83–2182, 84–2321.**

United States District Court, S.D. West Virginia, Charleston Division.

Jan. 22, 1986.

John T. Poffenbarger, Charleston, W.Va., S. Gordon Elkins, Jeffrey A. Lutskey and Georganne Daher Terrill, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for Roxalana.

John M. Slack, III, Jackson, Kelly, Holt & O'Farrell, Charleston, W.Va., for Masonite and Employers Ins. of Wausau.

Charles E. Hurt, Charleston, W.Va., for McCoy.

Charles W. Yeager, Steven P. McGowan, Steptoe & Johnson, Charleston, W.Va., for Diamond Hill.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are several motions requiring consideration prior to trial of this matter. Roxalana seeks yet even more discovery by its motions—all filed after the October 1, 1985, deadline for discovery. Because additional discovery at this juncture would delay the resolution of the action, Plaintiff's motions for additional discovery are denied as untimely. The Court will next consider Masonite's motion for judgment on the pleadings.

Roxalana's complaint asserts causes of action under tort and Uniform Commercial Code theories. In 1975 Roxalana commenced construction of an apartment complex project in Dunbar, West Virginia. After the project began, Masonite approached Roxalana and offered for sale a siding material, tradenamed "Stuccato," which Masonite manufactured. Roxalana agreed to purchase a large quantity of the Stuccato board. In its complaint Roxalana claims that Masonite negligently and defectively manufactured the Stuccato board and that the condition of Masonite's product violated warranties relating to the sale. Diamond Hill Plywood Company and McCoy Industries, Inc. also are sued as vendors of the Stuccato board charged to be defective.

As noted, the Defendant Masonite raises this motion as one for judgment on the pleadings, and the Court will consider the motion as posed by the Defendant. Initially, the Court considers whether Roxalana's complaint states an action in tort. Second, the Court will consider whether the cause of action stated under contract for the Uniform Commercial Code is affected by the applicable statute of limitations.

The first question then is whether Roxalana's complaint, considering the facts

which are alleged or could be proved under its second amended complaint, states an actionable tort claim. The West Virginia authority most helpful on this issue is found in *Star Furniture Co. v. Pulaski Furniture Co.*, 297 S.E.2d 854 (W.Va. 1982). In addressing the question of where contract and tort claims diverge, the Court opined:

> "We reject the line of cases begun by *Santor v. A & M Karagheusian, Inc.*, 44 N.J. 52, 207 A.2d 305 (1964), which has permitted the use of strict liability to recover the difference between the value of the product received and the purchase price in the absence of a sudden calamitous event. [citations omitted.] In West Virginia, property damage to defective products which results from a sudden calamitous event is recoverable under a strict liability cause of action. Damages which result merely because of a 'bad bargain' are outside the scope of strict liability."

297 S.E.2d at 859.

Despite Plaintiff's arguments to the contrary, the Court here is faced with language which fairly clearly indicates that a sudden calamitous event is required to support an action in strict liability in tort. Even if a sudden calamitous event were not required to state a cause of action in tort, the Supreme Court of Appeals of West Virginia expressly excluded tort liability for "bad bargains."

In considering what distinguishes a tortiously manufactured product from a bad bargain, the Third Circuit in *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165 (3d Cir.1981) considered (1) the type of risk involved, (2) the nature of the defect, and (3) the manner in which the injury arose. With respect to the risks involved and the nature of the defect, an ordinary malfunction—among those risks ordinarily contemplated by a purchaser—is distinguished from those which pose a distinctly and unreasonably dangerous condition.

Actions regarding merely ineffective products are actionable only in contract.

*Purvis v. Consolidated Energy Products*, 674 F.2d 217, 222–23 (4th Cir.1982). *See also Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569 (10th Cir.1984) (holding no tort recovery where defective dryer results in unsalable product). In the *Purvis* decision the Fourth Circuit held:

> "[5] All products carry the risk that they will serve their intended function poorly. In this sense, the risk of 'ordinary' malfunction is well within the contemplation of the average purchaser. [Citations omitted.] This view comports with common sense as well as with the underlying purpose of strict products liability, which is to protect consumers from products which are unreasonably unsafe, not from those which are merely ineffective. [Citations omitted.] When a loss results from mere product ineffectiveness, it is the law of contracts and commercial transactions, rather than strict products liability, which fixes responsibility for the loss. *See generally Seely v. White Motor Co.*, 63 Cal.2d 9, 403 P.2d 145, 149–50, 45 Cal.Rptr. 17 (1965)."

*Purvis, id.*, 674 F.2d at 222–23.

Another characteristic of the "risk" the product poses is whether it is one of a type of risk which invariably will be asserted solely by the purchaser. If the purchaser alone is the only interested party who asserts the claims regarding a particular defect, the contract is the proper vehicle for allocating risks of failure of the product to perform up to expectations. *Jones and Laughlin Steel Corp. v. Johns-Manville Sales Corp.*, 626 F.2d 280, 285–88 (3rd Cir. 1980).

With respect to the manner in which the injury arose, several courts have determined also that "physical injuries" are compensable under tort law and "economic losses" are compensable under contract law. The Third Circuit described a "physical injury" as one where the defect creates a safety hazard and where the injury to the property is so akin to personal injury that there is no reason for distinguishing them. *Pennsylvania Glass Sand*, 652 F.2d at

1170. Comparatively, economic losses are losses of the benefit of the bargain—the loss of the service the product was supposed to render. *National Can Corp. v. Whittaker Corp.*, 505 F.Supp. 147, 149 (N.D.Ill.1981). If the injury is an economic loss, then tort law need not enter the picture. *National Can*, 505 F.Supp. at 155. Instructively, the West Virginia Court in *Star Furniture*, states: "[S]udden calamitous damage will almost always result in direct property damage ..., (while) deterioration, interest and depreciation will be considered economic loss." 297 S.E.2d at 859 n. 4 (citing *Cloud v. Kit Mfg. Co.*, 563 P.2d 248, 251 (Alaska 1977)).

Mere damage to other property does not preclude a finding of purely economic loss. In *Daitom, supra,* the defective dryer caused damage to the plaintiff's product—making it unsalable. The Tenth Circuit held that no tort recovery was available. In *Jones and Laughlin,* a defective roof caused damage inside the building [1] to the plaintiff's products, and the Third Circuit held a tort theory inapplicable. In *National Can Corp.*, the defendant's defective bottle caps caused the plaintiff's product—soft drinks—to deteriorate in the bottle. The Northern District Court of Illinois held that the tort remedy was unavailable.

Where, however, the product functions basically as designed and then proximately causes a sudden, calamitous damage, tort liability results. In *Pennsylvania Glass Sand,* a fire suppression system in a fork lift failed and as a result fire damage to the fork lift occurred. The Third Circuit reasoned that the fork lift could do its job and found that the calamitous damage gave rise to a tort recovery. Similarly, in *Hales v. Green Colonial, Inc.*, 490 F.2d 1015, 1022 (8th Cir.1974), a heater performed its assigned function, but started a fire. The Eighth Circuit found that the calamitous event gave rise to a tort claim.

In summary, the Court recognizes that the Supreme Court of Appeals of West Virginia has determined that not all damage to products or other property is actionable under strict liability. If the West Virginia Court already has not determined that a calamitous or sudden event is required to trigger tort liability, it would, at least, require something other than an allegation of a bad bargain.[2] This Court also opines that the West Virginia Supreme Court of Appeals likely would follow an analysis akin to *Pennsylvania Glass Sand* in determining when a product defect results in a breach of warranty or a tort.

Roxalana alleges in Counts IV and IX of its complaint that the Stuccato board was defective in a manner which was not contemplated by Roxalana. Roxalana specified the nature of the defect at paragraphs 13 and 14 of the complaint:

"13. On or about April 17, 1981, Roxalana discovered that the Stuccato manufactured by Masonite and sold to Plaintiff through Masonite's distributor, McCoy, was defective, unfit in the West Virginia environment for its intended use and unfit in said location for the particular purpose for which it was to be used in that, among other things:

(a) Stuccato is unduly susceptible to moisture;

(b) Stuccato does not permit the ventilation of moisture causing said moisture to become trapped in, around and behind the exterior siding panels;

(c) Stuccato absorbs moisture, swells up and becomes soft; and

(d) Because Stuccato is slow to dry and traps moisture, it caused deterioration in the appearance and structure of Roxalana Hills.

14. As a result of the use of Stuccato by Plaintiff in Roxalana Hills, which Stuccato was defective, unfit in the West Virginia environment for its intended use and unfit in said location for the particu-

---

**1.** The opinion disclosed the presence of water in the mill resulting in electrical outages. 626 F.2d at 282.

**2.** *Jones & Laughlin,* 626 F.2d at 285–87 and n. 13, notes that this distinction is drawn in a majority of jurisdictions.

lar purpose for which it was sold, the apartment units comprising Roxalana Hills have experienced rotting and decay of the Stuccato siding panels (including degeneration of their appearance) and of many of the structural members of the various Roxalana Hills apartment units, which Plaintiff has been required and will be required to replace or repair, at great loss and expense, causing inconvenience to tenants, and other business disruption."

In summary, Roxalana complains of rotting and decay, degeneration of appearance and "inconvenience to the tenants." The risk that the product would not last for as long as the Plaintiff had expected is certainly one peculiar to the purchasers of products. The safety of the product is not mentioned nor even suggested by this pleading. The character of losses charged are decay and rotting—the type *Star Furniture* explicitly held to be economic and, therefore, the subjects of a bad bargain. Here, the Plaintiff alleges that the products should have ventilated the vapor from the interior of the buildings to the outside, just as the bottle caps in *National Can* should have preserved the product in the bottle and just as the roof should have held its place, not absorbed moisture or lost its dimensional qualities as in *Jones & Laughlin Steel*. Because Roxalana complains of a bad bargain, of economic loss, it cannot make a strict liability in tort claim out of this commercial case.

■ There is also a secondary issue as to whether Roxalana's simple negligence claim against Masonite should survive. *Jones & Laughlin* dealt with this question in terms of the scope of relief defined in the Restatement (Second) of Torts:

"Disallowance of tort claims for economic losses accords with the provisions of the Restatement (Second) of Torts that discuss a manufacturer's liability for negligence and strict liability. Section 323 of the Restatement (Second), for example, which defines the liability of one who negligently performs an undertaking to render services, provides that a manufacturer is liable to persons using its products for 'physical harm' caused by its negligence. Neither the rule nor its accompanying commentary and illustrations extends liability for negligence to encompass economic losses. [footnote omitted]. Similarly, §§ 402A and 402B, which establish respectively strict liability for defective products and misrepresentation in the sale of products, apply only where the product or misrepresentation causes physical harm to the user of the product. Nowhere in the accompanying commentary or illustrations do the reporters of the Restatement indicate that the doctrine of strict liability covers economic losses. [footnote omitted]. Indeed, comment d to § 402B strongly implies that the rule was not intended to overlap the provisions of the Uniform Commercial Code or the common law of sales, which traditionally provided the sole basis for recovery of economic losses: 'The liability stated in this section is liability in tort, and not in contract; and if it is to be called one of "warranty," it is at least a different kind of warranty from that involved in the ordinary sale of the goods from the immediate seller to the immediate buyer.'" [footnote omitted].

*Jones & Laughlin*, 626 F.2d at 287–88.

*Hart Engineering v. FMC Corporation*, 593 F.Supp. 1471, 1483 (D.R.I.1984), relying on the Fourth Circuit's *Purvis* case held that the same reasoning which distinguishes between the strict liability theory and the contract theory distinguishes the negligence theory from the contract theory. The Court believes that West Virginia would not find a negligence cause of action in a breach of contract case merely because the breach occurred negligently. The Court concludes the same bargain and expectation interests apply to negligent breaches of contract, *Pennsylvania Glass Sand*, 652 F.2d at 1173, and would similarly prohibit circumventing the Uniform Commercial Code for the redress of economic losses caused by ineffective prod-

ucts. *Jones & Laughlin,* 626 F.2d at 288–89.

Accordingly, Masonite's motion for judgment on the pleadings to dismiss Roxalana's tort claims, Counts IV, VIII and IX is granted.

■ The second question raised by Masonite's motion for judgment on the pleadings is whether Roxalana's complaint is barred by the statute of limitations. The relevant statute of limitations is found in *W.Va.Code,* § 46–2–725, which states in pertinent part:

"(1) an action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the goods must await the time of such performance the cause of action accrues when the breach if or should have been discovered.

\*　\*　\*　\*　\*　\*

(4) This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before this chapter becomes effective [July 1, 1964]."

Roxalana constructed the buildings containing the offending Stuccato panels beginning in 1975. The complaint discloses that "warranties" are alleged; however, the warranties alleged relate to the ability of the Stuccato board to withstand the environment in West Virginia, that the products would be of merchantable quality, that the product would be fit for its intended particular use, and that it would be fit for its ordinary purpose.

Noticeably lacking here is the allegation that the product would last any particular length of time. Despite the complaint's otherwise complete listing of the warranties it explicitly alleges, the allegation seeking the warranty which explicitly extends the time of performance is not asserted. From the pleadings alone, the Court holds that defects relating to the product delivered prior to March 28, 1979, would not be actionable because they would be barred by the applicable four-year statute of limitations.

Were the Court to consider the matter as a motion for summary judgment, as Roxalana has invited the Court to do, and to which Masonite has assented, the Court is presented with the additional information that the principal utilization of Masonite's product occurred between 1975 and 1977. Roxalana first discovered that the Stuccato board had discolored and in some instances buckled in early 1977. Roxalana called Masonite to enlist its assistance in clearing up the problem.[3]

The Court notes that the significance of Roxalana's Exhibit E is twofold: (1) Roxalana argues that it created a warranty for performance over an extended time; and (2) it indicates that Roxalana clearly knew that the Stuccato board was defective long before the claimed April, 1981, date of discovery stated in the complaint. Under *W.Va.Code,* § 46–2–725(2), even assuming Roxalana is correct in arguing that there is an extended warranty, Roxalana discovered the defect less than a year after the installation in the principal Roxalana Hills project was complete, and accordingly, its cause of action accrued in 1977.

In support of its contention that it is entitled to a warranty for extended performance, Roxalana tenders documents which it argues demonstrate "warranties" relating to the length of time which the board would perform. These "warranties" are not found in documents relating to the sale itself, but rather in an advertisement

---

**3.** *See,* Exhibit E, Exhibits in Support of Plaintiff's Answer to Motion of Defendant Masonite Corporation to Dismiss and for Judgment on the Pleadings.

presumptively published prior to the date Roxalana purchased the Stuccato board, and in statements made by Masonite's agents after the principal purchase of the Stuccato board had been consummated.

Roxalana claims that Masonite "warranted" that the Stuccato X–90 board is "specifically formulated for weatherability and durability." Roxalana also asserts that Frank Madden, Howard Spault and Ron Kesselring made certain statements which constituted warranties as to the Stuccato board's extended performance. Madden and Spault each made statements in their depositions which contain their opinions that the Stuccato board, if properly installed, would last the lifetime of the building to which it is attached. Kesselring, pursuant to Roxalana's inquiries shortly after the principal construction had been completed in 1977, reviewed the installation technique of Roxalana's construction companies and made certain specific recommendations as to how to properly install the Stuccato siding boards. At the conclusion of a letter sent to Roxalana, Kesselring states that in his opinion if the requested changes in construction technique were made, the board should perform "quite satisfactorily."

Masonite expressly warranted its Stuccato siding for five years for the factory applied finish nails, and it is expressly warranted that the siding will stand up for twenty-five years against hail damage. See Exhibit Q to the Plaintiff's Response to the Defendant's Motion for Judgment on the Pleadings. Masonite did not warrant the general appearance or explicitly warrant any length of time for which the siding will otherwise endure in the brochure appearing at Plaintiff's Exhibit Q. The language Roxalana asserts in support of its contention that an express warranty was created is found on the second page of a twenty-four page brochure. The brochure contains several general comments about X–90 boards, and further contains a two-page section which lists the express warranties and the time for which the warranties extend on the various X–90 siding products. The language which Roxalana draws its support from is contained in the general introductory remarks concerning X–90 side boards.

*W. Va. Code,* § 46–2–313 states:

"(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to goods and becomes a part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made a part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

* * * * * *

(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

Each of the three methods (two of which are indicated) provided for in § 46–2–313(1) requires that the affirmation, description or sample be made "a basis of the bargain." Roxalana does not suggest how the statements by Masonite's agents after the project at Roxalana's apartment complex was completed constituted a basis for the bargain for the previously sold goods. The only "warranty" which might be considered a basis for the bargain are Masonite's introductory remarks contained in the pamphlet submitted to the Court as Plaintiff's Exhibit Q. The pamphlet says that X–90 boards, of which Stuccato board is one, is "specifically formulated to provide durability and weatherability." The statement does not relate to a period of time and it does not warrant that it will accomplish the goal for which it was designed. The statement merely says that X–90 board has been "specifically formulated" for this purpose. Thus the statement relates to the

value of the product and falls short of the factual affirmation or description which forms the basis of a bargain.

The statements of Madden, Spault and Kesselring relied upon by Roxalana as warranties, are easily dismissed as merely opinions, in addition to the problem of their not being a basis of the bargain.

Roxalana further argues that Masonite's responses to Roxalana's inquiries regarding problems with Stuccato siding set up an equitable estoppel. Upon reviewing Roxalana's factual offerings in this area, the Court concludes that there were no representations by Masonite which approach the representations of fact or inducements for Roxalana not to take action which are required to invoke this tolling principle. *Humble Oil and Refining Co. v. Lane*, 152 W.Va. 578, 165 S.E.2d 379, 384 (1969).

Accordingly, the Court determines that if limited to the complaint and answer, the pleadings demonstrate that this action is barred by the applicable statute of limitations for those products purchased prior to March 28, 1979. Considering those matters offered factually to establish a tolling of the statute, the Court concludes that the factual offerings create no genuine issue of fact for trial and that Masonite is entitled to judgment as a matter of law on the remaining Uniform Commercial Code counts.

The Court notes, however, that the Plaintiff may proceed on the approximately 225 Stuccato panels which were purchased after March 28, 1979. These sales are not barred by the statute of limitations under the Plaintiff's Uniform Commercial Code theories. Accordingly, the Court considers as actionable those approximately 225 Stuccato panels which were purchased within the statute of limitations applicable to this action.

One remaining issue concerns Diamond Hill Plywood's and McCoy Industries' motion to amend their answers to incorporate the statute of limitations defense. The issue posed by the late filed motions is whether the amendment to raise this defense should be freely granted as "justice requires." *Rule* 15(a), Federal Rules of Civil Procedure. The limitations defense was asserted from the outset by Masonite, and it is evident from Roxalana's response to Masonite's motion that Roxalana was prepared to meet the defense. The interposition of the statute of limitations to this litigation gives dispute finality to a seemingly interminable commercial transaction. Extending this defense to the vendors of the Stuccato board does not delay consideration of this case. To prohibit the amendment effectively would deny Masonite the defense it has raised seasonably.[4] For these reasons, the Court grants the motions to amend to permit McCoy and Diamond Hill the statute of limitations defense and the proposed amended answers are ORDERED filed herewith.

Also pending are McCoy's and Diamond Hill's motions for summary judgment regarding scope of insurance coverage and the insurers' duty to defend these entities under certain insurance contracts. The facts necessary to resolve these motions for summary judgment are not before the Court. Because the factual predicate is incomplete and because the motions are not ripe, McCoy and Diamond Hill's motions are denied without prejudice.

The Clerk is directed to send a certified copy of this Memorandum Opinion and Order to counsel of record.

---

**4.** Roxalana, as it has been previously noted, proceeds against McCoy and Diamond Hill on the basis that they were sellers of the Stuccato siding which breached implied warranties. McCoy and Diamond Hill, in turn, proceed against Masonite for indemnity as they merely warehoused or shipped the Stuccato board without modification. To allow Roxalana to proceed against McCoy and Diamond Hill on the time barred claims would allow Roxalana to do indirectly what it cannot do directly; that is, recover from Masonite for breaches of warranty prior to the four years next preceding the filing of this complaint.