A92A1324. LEND LEASE TRUCKS, INC. v. TRW, INC. et al.
(425 SE2d 293)

POPE, Judge.
Appellant/plaintiff Lend Lease Trucks, Inc. ("Lend Lease") is in the business of renting and leasing trucks. Appellee/defendant Freightliner Corporation ("Freightliner") is a truck manufacturer. Appellee/defendant TRW, Inc. ("TRW") is a distributor and manufacturer of truck parts, including steering gears, for use in commercial trucks. In 1988, Lend Lease ordered 72 trucks to be built to specification by Freightliner and 90 trucks to be built to specification by Volvo. Lend Lease specified that TRW's TAS-65 steering gear be installed in all 162 trucks.

TRW first introduced the TAS-65 steering gear in March 1988. In May 1988, TRW became aware of operational failures of the TAS-65 steering gear. By August 1988, TRW identified a population of 27,000 TAS-65 steering gears which possibly contained the defect causing operational failure. The trucks in which those TAS-65 steering gears had been placed were frozen in place until new gears could be installed.

TRW entered into certain agreements with truck manufacturers and owners to compensate them for loss of use of the trucks while the steering gears were replaced. Certain trucks containing TAS-65 steering gears were in Lend Lease's possession at the time of the recall.

Lend Lease was compensated for loss of use of those trucks by TRW. The TAS-65 steering gears placed in the 162 trucks ordered by Lend Lease were replaced while the trucks were still at the manufacturing plants. The truck manufacturers were unable to deliver the ordered trucks to Lend Lease on the projected date due to the replacement of the TAS-65 steering gears. Therefore, Lend Lease also sought compensation for the 162 trucks that were in the possession of Freightliner and Volvo at the time of the recall. TRW refused to compensate Lend Lease for the loss of use of these vehicles and Lend Lease filed this action. Both TRW and Freightliner filed motions for summary judgment and the trial court granted those motions. Lend Lease appeals from those judgments.

1. In the sole enumeration of error concerning the trial court's grant of summary judgment to Freightliner, Lend Lease argues that the trial court erred in considering an affidavit submitted in support of Freightliner's motion for summary judgment that was not made available to Lend Lease until the day before the hearing on Freightliner's motion for summary judgment. The affidavit in question was the affidavit of Charles Bergeron, Senior Vice-President of Finance for Freightliner, who averred that on behalf of Freightliner, he negotiated with Robert Hoeffner, an employee of Lend Lease, a contract titled "Lend Lease Truck, Inc. — Terms and Conditions of Sale," which governed the sale of all 1988 and 1989 model year vehicles to Lend Lease. Bergeron further averred that Hoeffner signed the agreement on behalf of Lend Lease and returned it to him. The contract discussed in the Bergeron affidavit was filed at the same time as Freightliner's motion for summary judgment as an attachment to the affidavit of Jeannie Hall. In the Hall affidavit, however, she did not authenticate or identify the contract in any manner. After Lend Lease attacked the validity of the Hall affidavit, Freightliner filed the affidavit of Bergeron and all exhibits thereto, including the contract, the day before the hearing on Freightliner's motion for summary judgment.

The trial court improperly considered the Bergeron affidavit. "OCGA § 9-11-56 (c)[,] which requires that a motion for summary judgment be served at least 30 days before the time fixed for a hearing, and OCGA § 9-11-6 (d)[,] which requires that '(w)hen a motion is supported by affidavit, the affidavit shall be served with the motion,' have been construed together to mean that an affidavit relied on in support of a motion for summary judgment must be on file for at least 30 days prior to the hearing. [Cits.]" *Gunter v. Hamilton Bank &c.*, 201 Ga. App. 379, 381 (411 SE2d 115) (1991). Accord *Porter Coatings v. Stein Steel & Supply Co.*, 247 Ga. 631 (278 SE2d 377) (1981). Although the strict requirements of the statutes may be "waived by the opposing party's acquiescence in the use of the un-

timely materials, or if the movant seeks and obtains an order from the trial court under OCGA § 9-11-6 (b) extending the time for filing[,]" *Gunter*, 201 Ga. App. at 381, neither of these factors are present in this case. Accordingly, the trial court improperly relied upon the Bergeron affidavit in granting Freightliner's motion for summary judgment. In so holding, we do not express an opinion as to the merit of Freightliner's motion for summary judgment.

2. With regard to TRW, Lend Lease contends the trial court erred in granting TRW's motion for summary judgment as to Lend Lease's negligence claim against TRW because there remains a genuine issue of material fact concerning whether the TAS-65 steering gears installed in the 162 trucks ordered by Lend Lease caused "damage to property other than to the allegedly defective product." Our Supreme Court has held "an action in negligence does not lie absent personal injury or damage to property other than to the allegedly defective product." *Vulcan Materials Co. v. Driltech*, 251 Ga. 383, 388 (306 SE2d 253) (1983). In support of this contention, Lend Lease relies upon our decision in *Mike Bajalia, Inc. v. Amos Constr. Co.*, 142 Ga. App. 225 (235 SE2d 664) (1977). In *Mike Bajalia*, there was evidence that the components supplied by the defendant had harmed other components of a building; therefore, we held the plaintiff could pursue its negligence claim against defendant. Id. at 226. Lend Lease analogizes this case to *Mike Bajalia* contending when the allegedly defective gears were installed in the trucks the gears rendered the trucks defective because the trucks were unusable. However, there is no evidence that when the allegedly defective steering gears were placed in a truck, the gears harmed any component of the truck or the truck itself. Being unable to use a vehicle until a component can be replaced is not damage to other property as contemplated by our decision in *Long v. Jim Letts Oldsmobile*, 135 Ga. App. 293 (217 SE2d 602) (1975) and its progeny. Thus, Lend Lease's reliance on *Mike Bajalia* is misplaced. The trial court properly granted TRW's motion for summary judgment as to Lend Lease's negligence claim.

3. Lend Lease also posits there remains a genuine issue of material fact concerning whether Lend Lease was an intended third party beneficiary of the settlement agreements between TRW and certain truck manufacturers, including Freightliner and Volvo. Lend Lease argues that under those agreements, TRW has a duty to compensate Lend Lease because Lend Lease was a "person or entity holding legal title to a truck which was placed in service prior to August 16, 1988 and which was included in the recall." It is undisputed that steering gears were replaced in the 162 trucks at issue within 75 days from the projected delivery date and both Volvo and Freightliner do not allow cancellations within that time frame. Therefore, Lend Lease argues because it could not cancel the trucks, it was the legal owner of the

trucks and entitled to compensation. We refuse to construe the term "legal title" in those agreements in the manner suggested by Lend Lease. The common definition for "legal title" is "[o]ne cognizable or enforceable in a court of law, or one which is complete and perfect as far as regards the apparent right of ownership and possession. . . ." Black's Law Dictionary 897 (6th ed. 1990). Until the trucks were completed and Lend Lease received title to the trucks, Lend Lease did not have "legal title" to the trucks.

Furthermore, Lend Lease's contention that it is an intended third party beneficiary under the contracts between Volvo and Freightliner is without merit. In order to enforce the terms of a contract as a third party beneficiary, "it must clearly appear from the contract that it was intended for his benefit." *Backus v. Chilivis*, 236 Ga. 500, 502 (224 SE2d 370) (1976). The agreements between Volvo and Freightliner with TRW do not discuss compensation to persons or entities that had ordered trucks which were in a noncancellable stage at the time the steering gears were replaced. As Lend Lease acknowledges in its brief, Dale Bough, the TRW representative who decided not to compensate Lend Lease for the 162 trucks, stated in his deposition that Lend Lease's situation was *never discussed* in the negotiations which led up to TRW's agreements with Volvo and Freightliner concerning compensation for the replacement of defective steering gears. Accordingly, the trial court did not err in granting TRW's motion for summary judgment.

*Judgment affirmed in part and reversed in part. Carley, P. J., and Johnson, J., concur.*

DECIDED SEPTEMBER 24, 1992 —
RECONSIDERATION DENIED NOVEMBER 23, 1992

*Lamar, Archer & Cofrin, Robert C. Lamar, Brian J. O'Shea*, for appellant.

*Long, Weinberg, Ansley & Wheeler, Ben L. Weinberg, Jr., T. Kevin Mooney, Robin L. Peek, Neely & Player, Edgar A. Neely III, Lorre J. Gaudiosi, Richard B. North, Jr.*, for appellees.