58563, 58590. RAMSEY BRICK SALES COMPANY et al. v. OUTLAW et al.; and vice versa.

BANKE, Judge.

The plaintiffs, Ramsey Brick Sales Company and General Shale Products Corporation, filed suit to recover from the defendants, John and Kathleen Outlaw, the balance due on the sale price of two shipments of brick used in the construction of their (the defendants') home. The defendants admitted in their answer that the account had not been paid in full but alleged that a portion of the brick were defective. They counterclaimed to recover actual and punitive damages for breach of warranty, negligence, and fraud.

Ramsey Brick described itself in the complaint as the "agent and jobber for the [co-] plaintiff General Shale Products Corporation in the transaction whereby various material and equipment were sold to defendant herein." Ramsey Brick arranged the sale to the defendants and Georgia Shale manufactured and delivered the brick.

The evidence introduced at trial established that the second of the two shipments of brick differed significantly in color from the first and from the samples on which the defendants had based their selection. Mr. Outlaw stated that because the second shipment was delivered on a rainy day, the brick became wet, and the color discrepancy could not immediately be detected. By the time the brick had dried out, they had already been laid into the back wall of the house. General Shale subsequently attempted to apply a coloring agent to the brick to correct the problem in response to the defendants, complaints; but, according to the defendants, this made the color discrepancy even worse.

In support of their claim for damages, the defendants introduced evidence to show both diminution in market value of the home and cost of replacement of the defective brick. In defense of the counterclaim, the plaintiffs contend that the defendants irrevocably accepted the brick by laying them into the wall.

The jury returned a verdict in favor of the plaintiffs for the amount admitted by the defendants to be due on the purchase price and in favor of the defendants against

General Shale (but not against Ramsey Brick) for $6,000 as damages for breach of warranty. The trial judge directed a verdict in favor of the plaintiffs on the issues of negligence, fraud, and punitive damages. The plaintiffs filed a motion for new trial and brought this appeal from the denial thereof. The defendants cross appeal, complaining of the trial court's refusal to submit the negligence, fraud, and punitive damage issues to the jury. *Held:*

1. The plaintiffs contend that the verdict was inconsistent in that the jury found General Shale liable for breach of warranty while exonerating Ramsey Brick, despite the fact that it was Ramsey Brick which had arranged the sale. If Ramsey Brick could be considered a retailer or an intermediate seller, this argument would undoubtedly have merit, for then any warranty made by General Shale would perforce have been made by Ramsey Brick as well. However, as set forth above, the plaintiffs alleged in their joint complaint (and therefore have conclusively admitted) that Ramsey Brick acted as General Shale's agent in arranging the sale. Accordingly, the jury was authorized to find that the sale was made *directly* to the defendants by General Shale and that all warranties were made by General Shale through its agent Ramsey Brick. Accord, *U. S. Industries, Inc. v. Mitchell,* 148 Ga. App. 770 (4) (252 SE2d 672) (1979).

2. The second enumeration of error is directed towards the trial court's refusal to strike the testimony of a real estate appraiser who stated that the house was worth $9,200 less with the defective brick than it would have been worth had all of the brick been delivered as ordered. The plaintiffs moved to strike this testimony after the witness admitted on cross examination that he did not know what the house was actually worth on the market in its present condition.

After careful consideraton, we find the admission of this testimony to have been harmless. The defendants also produced testimony from a contractor to the effect that the defective brick would cost about $12,000 to replace. Since the jury set damages at an amount much lower than either of the two figures, we do not believe that the plaintiffs could have been harmed by the appraiser's

testimony. See *Dept. of Transp. v. Brand* 149 Ga. App 547 (5) (254 SE2d 873 (1979).

3. The trial court did not err in charging the jury on the law regarding express and implied warranties, exclusion and modification of warranties, and damages for breach of warranty. General Shale's contention that it could have extended no warranty to the defendants due to lack of privity has previously been disposed of in Division 1, supra. An issue as to express warranty arose from Ramsey Brick's use of a sample board, provided by General Shale, to assist the defendants in choosing the brick. See Code Ann. § 109A-2—313 (1) (c). An issue as to implied warranty of merchantability arose under Code Ann. § 109A-2—314 (2), which provides, in pertinent part, as follows: "Goods to be merchantable must be at least such as . . . (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved . . ." An issue as to implied warranty of fitness arose under Code Ann. § 109A-2—315, since the jury could have found from the evidence that "the seller at the time of contracting [had] reason to know [the] particular purpose for which the goods [were] required and that the buyer [was] relying on the seller's skill or judgment to select or furnish suitable goods . . ." The plaintiffs' contention that the defendants waived all warranties by acceptance of the brick as delivered merely raised a factual issue which was properly left to the jury for resolution. It did not create an absolute defense. Accord, *Jacobs v. Metro Chrysler-Plymouth, Inc.* 125 Ga. App. 462 (1) (188 SE2d 250) (1972).

4. Any error committed by the trial court in denying the plaintiffs' motion for directed verdict on the account claim was rendered harmless by the jury's verdict in their favor on this issue. The denial of the plaintiffs' motion for directed verdict on the counterclaim and of their motion for new trial was authorized by the evidence. Accord, *Sou. Concrete Prod. Co. v. Martin,* 126 Ga. App. 534 (1) (191 SE2d 314) (1972).

5. The defendants contend in their cross appeal that the court erred in not charging the jury on fraud, negligence and punitive damages. No evidence was

introduced to support a recovery on any of these theories. Furthermore, the defendants' counsel did not except to the charge as given, and, in fact, when asked if he had any exceptions replied: "None, your honor, I think it was a very good charge." A party in a civil case cannot complain of the trial court's instructions to the jury unless he has made specific objections thereto before the jury returns its verdict. Code Ann.§ 70-207 (a); *Sullens v. Sullens*, 236 Ga. 645 (224 SE2d 921) (1976).

*Judgment affirmed. McMurray, P. J., and Underwood, J., concur.*

SUBMITTED SEPTEMBER 26, 1979 — DECIDED OCTOBER 24, 1979.

*Larry D. Ruskaup*, for appellants.
*Walter H. Bolling, Jr.*, for appellees.