James **EDMONDSON, Darrill R. Dailey, Eddie York, Michael Alcone, Franz Rowland, Charles E. Dodd, Jr., Max Ward and Gary Ward, d/b/a Ward Farms, a partnership, and Donald Hiers, Plaintiffs-Appellees,**

v.

**NORTHRUP KING AND COMPANY, a foreign corporation licensed to do business in the State of Georgia, Defendant-Appellant.**

No. 86–8584.

United States Court of Appeals, Eleventh Circuit.

May 27, 1987.

---

Robert King High, Jr., Robert M. Ervin, Jr., E.C. Deeno Kitchen, Ervin, Varn, Jacobs, Odom, & Kitchen, Tallahassee, Fla., for defendant-appellant.

Allen D. Denton, Long & Denton, Quitman, Ga., Ernest A. Sellers, Andrew Decker, Airth, Sellers, Lewis & Decker, Live Oak, Fla., for plaintiffs-appellees.

Before RONEY, Chief Judge, HATCHETT, Circuit Judge, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This is an appeal by Northrup King and Company from a substantial judgment, based on a jury verdict, against it in a diversity action in the district court.

## I. STATEMENT OF THE CASE

### 1. *Course of Proceedings and Dispositions in the Court Below*

This part 1. is agreed to by all parties as satisfying a summary of the course of proceedings and disposition in the court below.

On November 16, 1984, James Edmondson, in a diversity-jurisdiction action, sued Northrup King and Company in the United States District Court for the Middle District of Georgia. On February 6, 1985, and February 7, 1985, the trial court consolidated Edmondson's action against Northrup King with those of Darrill R. Dailey, Eddie York, Michael Alcone, Franz Rowland, Charles E. Dodd, Jr., and Max Ward and Gary Ward, doing business as Ward Farms, a partnership, upon a finding that, in all the actions, the evidence and issues would be the same. On December 2, 1985, the actions of Edmondson, Dailey, York, Alcone, Rowland, Dodd and Ward against Northrup King were consolidated with that of Donald Hiers.

In an amended complaint, filed March 4, 1985, Edmondson alleged, among other things, that Edmondson purchased from Coastal Plains Farmers Cooperative a variety of Northrup King cottonseed known as McNair 220, that Edmondson planted the McNair 220 on his Brooks County, Georgia, farm, and that the McNair 220 failed to produce a "commercially viable crop of cotton." In separate counts, Edmondson alleged breach of express warranty, breach of implied warranty of merchantability, breach of statutory warranty under the Georgia seed law, negligence, gross negligence, and misrepresentation, and sought compensatory and punitive damages. On March 19, 1985, Northrup King filed its answer and affirmative defenses.

On October 29, 1985, Northrup King filed a motion in limine, seeking an order excluding at trial, as irrelevant and highly prejudicial, any evidence relating to "vigor tests" of McNair 220 conducted by Northrup King. Following an exchange of memorandums of law, the motion was denied.

On May 23, 1986, Edmondson, Dailey, York, Alcone, Rowland, Dodd, Ward, and Hiers filed notice of their intent to use at trial summaries of, among other things, "germination tests" and "vigor tests" of McNair 220 conducted by Brownfield Seed and Delinting Company. On May 27, 1986, Northrup King filed a motion in limine, seeking an order excluding at trial, as hearsay, irrelevant and lacking in authenticity, any evidence relating to "germination tests" or "vigor tests" of McNair 220 conducted by Brownfield Seed and Delinting Company. The motion was denied.

On October 29, 1985, Northrup King filed a motion for summary judgment, seeking limitation of any liability, pursuant to conspicuous disclaimers displayed on the McNair 220 bags, tags and shipping orders, to the purchase price of the McNair 220. Following an exchange of memorandums of law, the trial court on March 25, 1986, denied the motion. During the trial, at the conclusion of the plaintiffs' case, Northrup King renewed its motion. The motion was again denied.

On October 29, 1985, Northrup King filed a motion for summary judgment as to Counts One and Two, the breach of warranty counts, for want of privity of contract under Georgia law. Following an exchange of memorandums of law, the trial court on March 25, 1986, denied the motion. During the trial, at the conclusion of the

plaintiffs' case, Northrup King renewed its motion. The motion was again denied.

On October 29, 1985, Northrup King filed a motion for summary judgment as to Counts Four, Five and Nine, the negligence counts, for want of compensable damages under Georgia's economic-law rule. Following an exchange of memorandums of law, the trial court on March 25, 1986, denied the motion.

During the trial, at the conclusion of the plaintiffs' case, Northrup King moved to strike the claim for punitive damages contained in Count Six, the gross negligence count, for want of any showing under Georgia law, of willful misconduct, malice, fraud, wantonness, oppression, or an entire want of care which would raise the presumption of a conscious indifference to consequences. The motion was denied.

During the trial, at the conclusion of the plaintiffs' case, Northrup King moved to strike Count Seven, the misrepresentation count, for want of any showing under Georgia law, of knowledge of falsehood. The motion was denied.

In a general verdict, the jury found for all the plaintiffs, awarding a total of $1,180,274.69 in damages, $786,849.79 of which was compensatory and $393,424.90 of which was punitive. The jury awarded Edmondson $757,601.52 in damages, $505,-067.68 of which was compensatory and $252,533.84 of which was punitive. The jury awarded York, Rowland and Dodd a total of $205,703.28 in damages, $137,-135.52 of which was compensatory and $68,567.76 of which was punitive. Northrup King's motion for a new trial was denied July 7, 1986. Northrup King's notice of appeal was filed July 28, 1986.[1]

## II. STATEMENT OF FACTS

Initially, it must be made clear that the facts proven at trial are different in at least one significant respect as between plaintiffs Edmondson, York, Rowland and Dodd, on the one hand, and Dailey, Alcone, Ward and Hiers on the other. The distinction is based upon the fact that the cottonseed planted by the Edmondson group was from lots known as McNair 220, lots D292 or 2293. The Dailey group planted McNair 220 lots 4108, 4113, 4121 or 4123.

This difference is important as it relates to the issue of punitive damages, as to which the jury found for the plaintiffs in all seven cases. It is a fact that cannot be discerned from appellees' brief. Throughout their brief, they make statements about McNair 220 seed which are true as to the lots sold to the Dailey group, but which do not apply to the Edmondson group.[2]

Any discussion of the facts in this case must be viewed in light of the argument by defendants' counsel to the jury. This argument, decided upon by appellants' counsel as a tactical move following the trial court's denial of several of his motions for the exclusion of evidence, as to the validity of a limitation of warranty, and on the issue of privity, included the following statements:

> Now, let me make something clear. Northrup King is responsible for every bit of that cottonseed. I'm not trying to say anyone else on earth is responsible. We are responsible. If it didn't work, we ought to make it right. There's no question about that. But when you're looking at punishing people, let's look at all the circumstances.
>
> . . . .
>
> I want you to know that our company acknowledges responsibility. When we put the seed out under our tag, that's our seed. But I wanted you to take a look when it comes to talking about pun-

---

1. The agreed statement of the case ends at this point, but the record discloses without dispute that the jury awarded the other defendants, Dailey, Alcone, Ward and Hiers, a total of $216,-969.89 in damages, $144,646.59 of which was compensatory and $72,323.30 was punitive.

2. An illustration of this is the appellees' statement on page 37 of their brief that: "Dr. Wayne Guerke, Director of the Georgia State Seed Laboratory, testified that he placed an Official Stop Sale Order on the McNair 220 because NORTHRUP KING was fraudulently and illegally selling substandard cottonseed." The fact is that the stop order related only to the lots planted by the Dailey group.

ishing somebody. Look at the facts. Look at the state agencies that thought the seed should be certified, even the seed that came here. Notice that the Mississippi seed, D292, was below 80 on the tag. Know all the facts because this is not a punitive damage case. It's a case where some people ought to be fairly compensated. And that's what I suggest you ought to do in the case.

. . . .

Here it is May of 1986 and I'm standing in a Court in South Georgia defending a seed company with some seed that didn't work. . . . I think you'll agree with us that we've presented this as when you've got some bad seed—and we had some—be fair with the people. . . . I sincerely ask you to return a verdict in this case that you can be proud of, that fairly compensates any person that had a claim here ... a fair and reasonable verdict.

It is undisputed that in order to sell cottonseed across state lines, the seed must be a part of a "lot" which is a definite quantity of seed, identified by a lot number, every portion or bag of which is uniform within the recognized tolerance for several factors, including the germination rate. Cottonseed is generally labeled as having a germination rate of 80 percent. This means that by a test that has been performed by a certified state or other official testing organization, 80 percent of the seed is expected to germinate and grow. In addition to the official testing by a certified testing organization, many seed companies, including the defendant here, made certain other tests which go under the general name of "vigor" tests or "cool" tests.

Discussing first the test whose results were placed on the tags borne by the McNair 220 lots D292 and 2293, as sold to the Edmondson group, we note that the bags of this lot bore a State of Mississippi certified test of 75 percent and 71 percent germination rate respectively. The official certifications introduced in evidence showed these two percentage rates of germination. The bags of seed, however, were tagged with blue tags, which many of the witnesses at trial testified caused them to believe that the normal germination rate of 80 percent was represented as to these bags. There is no evidence that any representation was made by the defendant that the germination rate was other than that which the tags bore on their face.

Referring now to the lots in the 4000 series, particularly lots 4123 and 4121, the director of the seed laboratory of the Georgia Department of Agriculture tested these two lots following their being presented to it on April 24, 1984. Dr. Guerke, the director, testified without objection that before any of the plaintiffs in this case had planted their seed in 1984, Northrup King had been notified that these lots did not meet the standard required under the Georgia law and that he had later issued a "stop sale" order on McNair 220 lot 4123.

Because of the disposition we make of the issue dealing with the limitation of warranty and the alleged lack of privity between Northrup King and the plaintiffs, we do not discuss the factual presentation dealing with these issues.

There was substantial evidence that the crop failure of plaintiffs was caused by the defective Northrup King seed. The plaintiffs introduced substantial evidence of vigor tests on all of the cottonseed sold during this particular year by Northrup King which tests showed a germination rate much lower than resulted from the standard certification test. Although defendants had filed a motion in limine to prevent this evidence from being introduced, it was introduced during the trial without objection.

On the factual issue of compensatory damages the contention made by the appellant is that Edmondson, whose verdict was much the highest per acre than any of the others, based his loss on improper evidence. Edmondson testified that after he had planted the Northrup King seed and discovered that it was not germinating, he had then planted other seed and had obtained a crop from it. However, instead of measuring his loss per acre by the difference between zero cotton production and the production resulting from the later planted seed, he compared the lack of production in 1984 with the rate of production he had achieved in an earlier year, 1982.

Edmondson testified that the later crop in 1984 was not a full crop because of his delay in planting it following the discovery of the defects in the Northrup King seed.

### III. ISSUES ON APPEAL

1. Was it reversible error to leave to the jury the question of the effectiveness of the limitation of liability which appeared on each bag of the cottonseed?

2. Was it reversible error for the trial court not to grant summary judgment for Northrup King as to the breach of warranty count because of a lack of privity between Northrup King and the plaintiffs?

3. Because all damage claimed is economic, was it reversible error not to grant summary judgment for Northrup King as to the negligence counts?

4. Was it reversible error for the trial court to admit into evidence testimony concerning the "vigor" tests on the grounds that they were irrelevant, confusing, misleading and unfairly prejudicial?

5. Was there insufficient evidence to support a verdict finding Northrup King liable for any damage as a result of any McNair 220 lots of cottonseed planted by any of the plaintiffs?

6. Was there insufficient evidence to support a verdict finding Northrup King liable for misrepresentation?

7. Was there insufficient evidence to support a verdict finding Northrup King liable for any punitive damages?

8. Was there insufficient evidence to support a verdict finding Northrup King liable for $757,601.51 in total damages to Edmondson?

### IV. DISCUSSION

1. *The Limitation of Liability Issue*

As noted above, the defendant filed a motion with the trial court asking for a summary judgment seeking limitation of any liability, pursuant to disclaimers displayed on the McNair 220 bags, tags and shipping orders to the purchase price of the seed. Following an exchange of memorandums of law, the trial court denied the motion. Northrup King renewed its motion at the conclusion of the plaintiffs' case. Appellant now claims that the trial court erred in submitting this issue to the jury.

Each bag of McNair seed had printed on its back:

> Our liability on this warranty is limited in amount to the purchase price of the seeds. This warranty is in lieu of all other warranties, express or implied, including warranties of merchantability and fitness for a particular purpose. There are no warranties which extend beyond the face hereof.

Appellant relied on the provisions of O.C.G.A. § 11-1-201(10) and O.C.G.A. § 11-2-302(1) to support its argument that both questions as to the "conspicuousness" and the "conscionableness" of the attempted limitation of warranty was for the court rather than for the jury to decide.[3]

Contending that the court correctly left these issues for determination by the jury, appellees rely on two factors. The first is that defendant below requested a charge to the jury dealing with the validity of this limitation of liability issue and also stated to the court that it had no objection to the charge as given by the court. The second is the appellant's argument to the jury, quoted above, which includes the following statement:

> Now, let me make something clear. Northrup King is responsible for every bit of that cottonseed. I am not trying to say anyone else on earth is responsible. We are responsible. *If it didn't work, we ought to make it right. There*

---

**3.** "Whether a term or clause is 'conspicuous' or not is for decision by the court." O.C.G.A. § 11-1-201(10).

"If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Ga.Code Ann. 11-2-302(1).

*is no question about that....* (Emphasis added.)

And the statement:

I sincerely ask you to return a verdict in this case that you can be proud of, *that fairly compensates any person that had a claim here....* (Emphasis added.)

■ Appellant contends that the argument they made to the jury was the best they could do under the circumstances, including the fact that the trial court had submitted the issue of limitation of liability to the jury over their protest and had overruled their motion to exclude certain other evidence in the case. We conclude that in following this course of action, which we can well understand under the circumstances, the defendant waived its contention that the trial court erred in submitting the issue to the jury.

### 2. *Alleged Lack of Privity*

Northrup King vigorously contended, by motion before the trial court, that they were entitled to summary judgment with respect to the breach of warranty counts of the complaint because they contended that there was no privity between Northrup King and the plaintiffs. It was their contention that the seed was bought by independent dealers who were selling the Northrup King seed.

■ Not only do appellees disagree as to the absence of privity between the parties, but they also contend that any defense based on lack of privity, was also waived by the argument of counsel for plaintiffs to the jury. Under the first branch of their argument, appellees rely on *Ramsey Brick Sales Co. v. Outlaw*, 152 Ga.App. 37, 262 S.E.2d 227 (1979), for the proposition that the facts as testified to demonstrated that the dealers in this case were "mere conduits" for the sale of cottonseed to the plaintiffs. They also cite *Whitaker v. Harvell-Kilgore Corp.*, 418 F.2d 1010 (5th Cir. 1969),[4] for the proposition that to establish privity "the plaintiff must be a purchaser

either directly from the manufacturer or from some other person such as a wholesaler or retailer." However, it is unnecessary for us to consider whether there was a lack of privity since the argument of counsel for defendant to the jury included a clear waiver of any such contention. For instance, counsel argued:

Now let me make something clear. Northrup King is responsible for every bit of that cottonseed. I am not trying to say anyone else on earth is responsible. We are responsible. If it didn't work *we ought to make it right. There is no question about that....* (Emphasis added.)

Although we understand the position counsel for the defendant was in when arguing this case to the jury, it is clear that his strategy included a decision simply to waive any contention that anybody else was responsible for the poor quality of the seed that was furnished. This waived any argument that there was a lack of privity between the plaintiffs and the defendant.

### 3. *Judgment on Negligence Counts*

Appellant contends that since the negligence counts were based solely on claims for economic loss there could be no recovery under the Georgia law, citing *Flintkote v. Dravo Corp.*, 678 F.2d 942, 945–48 (11th Cir.1982); *Vulcan Materials Co. v. Driltech, Inc.*, 251 Ga. 383, 306 S.E.2d 253 (1983).

■ Since counsel did not distinguish between the nature of the tort and contract claims in its argument to the jury and in view of the fact that counsel specifically stated that he had no objection to the charge as made by the court, we consider any error with respect to this matter was waived also.

### 4. *Submission of Evidence Relating to "Vigor" Tests*

While the evidence indicates that many seed companies test their seeds for inhouse purposes in a manner that shows a

---

**4.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this Court adopted as precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.

lower percentage of germination, neither federal nor state regulations require such a test. There was considerable evidence in this case that the 4000 series of McNair 220 had been submitted by Brownsfield in Texas to vigor tests which showed a much lower germination rate than had been shown on the tags under which the seed was sold. Having objected to all such vigor tests by motion in limine, no objection was made by counsel during the trial to the introduction of such evidence.

■ Appellant contends that this evidence was irrelevant to any issue in the case. Recognizing the broad discretion reposed in the trial court to admit expert evidence, *Miley v. Delta Marine Drilling Co.*, 473 F.2d 856, 858 (5th Cir.1973), and the strategy adopted by the defendant in its final argument to the jury, and the overwhelming evidence that the seed purchased by the plaintiffs was in fact almost worthless, we conclude that the trial court committed no reversible error in admitting such evidence.

### 5. *Sufficiency of the Evidence*

■ Even without the concession made in counsel's argument to the jury, there was clearly sufficient evidence to support a verdict finding that Northrup King was liable for the defective seed which had been purchased by the plaintiffs in this case. There was ample evidence that no other circumstance produced the near total loss of the 1984 crop after the Northrup King seed had been planted. Defendant did not argue to the contrary in presenting the issue to the jury.

### 6. *Evidence of Misrepresentation*

■ A careful reading of the record fails to disclose that there was any misrepresentation by Northrup King as to the lots of seed sold to the Edmondson group, McNair 220 lots D292 and 2293. They had been certified by the appropriate State of Mississippi officials at 75 percent and 71 percent. Although there was evidence that the purchasers assumed that since they bore a blue tag, the tags represented that there was an 80 percent germination certifica-

tion, this could not amount to a misrepresentation by the seller of the seed which correctly stated the actual facts.

■ To the contrary, there was evidence that the lots of seed of the 4000 series, which had been stored by Brownsfield in Texas, were falsely labeled when sold to the plaintiffs of the Dailey group. Moreover, there was evidence by the director of the Georgia seed testing organization that he had entered a stop order against some of this seed and that Northrup King was notified of this stop order before any of the seed had been planted by the plaintiffs. While it is not clear how he knew the actual date of all of the plantings by the Dailey group of plaintiffs, this evidence was not objected to and stands undisputed. We therefore conclude that there was evidence of misrepresentations to the Dailey group of plaintiffs who planted seed of the McNair 220 lots 4123, 4121, 4113, 4115 or 4108.

### 7. *Evidence to Support Punitive Damages*

■ Having concluded that there was no evidence of misrepresentation with respect to the sales of seed to the Edmondson group, we have carefully considered the record to determine whether there was any other evidence that would support a judgment for punitive damages in their favor. We find that there was a total lack of such evidence.

■ As already noted, there was substantial evidence that there had been a misrepresentation as to some of the 4000 series lots of seed. There was also evidence of the reliance by the plaintiffs on the representations made on the tags by Northrup King. Thus, the jury verdicts for punitive damages in the case of each of the plaintiffs must be reviewed according to the facts of each group.

This Court has construed the Georgia cases dealing with the imposition of punitive damages in *Kicklighter v. Nails by Jannee, Inc.*, 616 F.2d 734, at 737 (5th Cir.1980), where we stated:

Under Georgia law, the substantive law applicable in this diversity case, imposition of punitive damages is authorized only when there is "evidence of willful misconduct, malice, fraud, wantonness, or oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences....", citing *Gilman Paper Co. v. James*, 235 Ga. 348, 219 S.E.2d 447 (1975).

616 F.2d 734, 737.

Because of the proof of misrepresentations with respect to the seed sold to the Dailey group of plaintiffs, we conclude that the trial court did not err in failing to strike the counts dealing with punitive damages in their complaints. On the other hand, we conclude that the trial court erred in not striking the count for punitive damages claimed by the Edmondson group of plaintiffs.

8. *Nature of Evidence to Support a Verdict for Edmondson for Compensatory Damages*

■ As noted above, Northrup King complains that measuring his damages resulting from the defective seed which he planted in the spring of 1984, Edmondson compared the yield that he had had on the average acre in 1982. Northrup King contends that instead, he should have compared the acreage that had no production with the production enjoyed from the seed that had been planted to take the place of the failed Northrup King seed. As a result, there was testimony by Edmondson that his total loss amounted to some $505,-067. In response, Edmondson contends that there was evidence from which the jury could have found that the replanting was delayed so that the last of the seed was not planted until early in July and that as a result the production from the fields that were replanted was less than normally would have been expected. There was also ample evidence before the jury to the effect that the loss claimed by Edmondson represented a fair estimate of the damages he had suffered, including the fact that there was evidence that the yield in 1984 would normally have been higher than the yield in 1982, which had been used by Edmondson as a basis of comparison with his lost crop.

We conclude that there was an ample basis for the jury's verdict on this matter.

## V. CONCLUSION

In conclusion, we hold that the trial court did not err with respect to any of the issues raised on appeal other than its refusal to set aside the jury's verdict against the Edmondson group for punitive damages, since we find no basis for a determination of punitive damages against Northrup King as to the seed which they sold to this group of farmers.

As to all other matters, we affirm the decision of the trial court.

The judgment is REVERSED with respect to the award of punitive damages to the Edmondson group. The remaining judgments are AFFIRMED. The case is REMANDED to the trial court to enter a final judgment consistent with this opinion.